# CASES DETERMINED

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT JUNE TERM, 1852.

---

JACOB HOPPLE, WHO HATH SURVIVED AARON HAND, v. JOSEPH S. HIGBEE. *

1. In trespass *de bonis asportatis*, where there are no circumstances of aggravation laying ground for vindictive or exemplary damages, the measure of damages is compensation to the plaintiff for his loss.

2. The value of the property to the plaintiff at the time of the injury, with interest, furnishes ordinarily the measure of damages.

3. If the property, while in the hands of the trespasser, be attached or taken in execution upon process issued against the owner of the goods, and they be thus applied in satisfaction of the owner's debt, or otherwise for his benefit, that fact may be shown in mitigation.

4. And it is immaterial whether the process by virtue of which the property is taken from the possession of the trespasser, and applied to the owner's use, be sued out by the trespasser himself or by a third party. In either event the goods are appropriated to the owner's use, not by the act of the trespasser, but by act and operation of law.

5. Facts in mitigation cannot be specially pleaded, but must be given in evidence under the general issue.

6. Every plea in bar must be pleaded to the action. A plea to the damages merely is vicious.

---

This was an action of trespass, originally brought in the Circuit Court of the county of Cape May by Joseph S. Hig-

bee, the defendant in error, against Jacob Hopple, jun., and Aaron Hand. The declaration contained two counts:

1. For trespass *quare clausum fregit et de bonis asportatis.*
2. For trespass *de bonis asportatis.*

The following is an abstract of the bill of exceptions sealed by the judge upon the trial.

Plaintiff, Joseph S. Higbee, to maintain and prove the issue on his part, gave in evidence, that on the 15th day of June, 1850, the said plaintiff had in his possession in his barn, situate in the Lower Township of that county, a quantity of brandy, gin, and whiskey, of the value of three hundred dollars; and that the defendant, on said day, came on to his land and took the said brandy, gin, and whiskey away, against the remonstrances of plaintiff. And further gave in evidence, that the said plaintiff purchased the said brandy, gin and whiskey of one William D. Midlen, and paid him therefor the aforesaid sum of money: and thereupon submitted his said case upon the said evidence to the jury, claiming, as damages only, the value of said brandy, gin, and whiskey, and interest.

And thereupon the counsel of the said defendants, to maintain and prove the said issue on their part, did offer to give in evidence that, before the taking of the said liquor, Jacob Hopple, jun., one of said defendants, sued out a certain writ of attachment against the said William D. Midlen for the sum of ninety-six dollars, issued by a justice of the peace, and put the same into the hands of Aaron Hand (defendant), one of the constables of the county of Cape May, to be executed; and that the said liquor was seized and taken, by virtue of said attachment, as the property of said William D. Midlen; and that shortly after the seizing and taking of said liquor, and before the commencement of this suit, the defendants, discovering that the attachment was void, offered to restore said liquor to plaintiff, who refused to receive the same; and that afterwards the said Jacob Hopple, jun., sued out a writ of attachment against the said William D. Midlen, in the Court of Common Pleas of said county of Cape May, in due manner according to the statute it such case made and provided, by virtue whereof said liquor was seized and attached as the pro-

perty of said Milden, and duly sold by order of.said court to satisfy the debt of the plaintiff and other applying creditors: and such proceedings were had upon said attachment, in due form of law, that judgment was rendered therein for the said plaintiff in attachment against the said William D. Midlen for the sum of $101.86 debt, and $46.79 costs, which judgment remains in full force.

And that the said brandy, gin, and whiskey, when seized and taken by defendants as aforesaid, and when attached as aforesaid, were the property of said William D. Midlen, and not the property of plaintiff; and that the said sale by said Midlen to plaintiff, if any there was, was made with the intent to delay, hinder, and defraud the creditors of said Midlen, and was wholly covinous, fraudulent, and void.

And the said counsel of the defendants did then and there insist that the said evidence, as offered on the part of the defendants, was competent and sufficient evidence, and ought to be allowed and admitted as evidence to reduce the damages of the plaintiff in said action for the taking of said brandy, gin, and whiskey, and then and there offered said evidence for that purpose. But to this the counsel of plaintiff did then and there insist, that the plaintiff was entitled to a verdict for the value of said brandy, gin, and whiskey; that the said matters and things so offered to be given in evidence on the part of the defendants, were not competent and legal evidence to be admitted for the purpose aforesaid : and the said judge did then and there overrule the said evidence, and refuse to permit the same to be submitted to said jury, on the part of the defendants, for the purpose for which the same was so offered as aforesaid.·

And, at the request of counsel for defendants, a bill of exceptions is sealed.   August 13, 1851.

The jury found a verdict for the plaintiff for the value of the liquors and interest.

Reasons for reversal :

1. Because the judge overruled competent and legal evidence.

2. Because the judgment in the said case was given for the

said plaintiff, whereas, by the law of the land, the said judgment ought to have been given for the said defendants.

The cause was argued at February term, 1852, before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*Keasbey*, for plaintiff in error.

The single question presented by this case is, where goods have been taken under void process, and subsequently, while in the hands of the taker, attached by virtue of valid process issued at the suit of the same party against the owner, can the application of the goods to the owner's use, under the valid attachment, be shown in mitigation of damages in an action for the original wrongful taking.

All the cases agree that where the property is taken out of the hands of the wrongdoer by legal process issued at the suit of a *third* party, the fact may be shown in mitigation of damages. *Irish* v. *Cloyes*, 8 *Verm.* 30 ; *Lamb* v. *Day*, 8 *Verm.* 413 ; 6 *Mass.* 20 ; 10 *Met.* 317 ; 2 *Hill* 204 ; 13 *Johns.* 220 ; 24 *Wend.* 379 ; 5 *Mass.* 104, 395.

But it is urged, that where the subsequent application of the property to the owner's use, although by due process of law, is effected at the instance of the wrongdoer himself, he cannot show such application in mitigation of damages.

And this distinction is sustained by the New York decisions, in *Otis* v. *Jones*, 21 *Wend.* 394, and 17 *Wend.* 91.

Such a distinction is unjust and unreasonable. The true principle is, that while the wrongdoer is liable for his trespass, yet he may always show the *bona fide* application of the goods to the owner's use, *with his consent*, express or implied, in mitigation of damages. And such consent will be implied wherever the property has been taken by due process of law against the owner, whether at the suit of the wrongdoer or a third party. Such is the opinion of Judge Greenleaf, expressed in the note to 2 *Greenleaf's Ev.* 635.

And it was so expressly held in *Stewart* v. *Martin*, 16 *Verm.* 397, and 3 *Dana* 489, 494.

The general principle is also recognized in the cases first cited, and in 9 *Pick.* 551 ; 14 *Pick.* 356 ; 1 *Greenl. Rep.* 198.

It is said that the defendant below was a wrongdoer, and could not by any act of his own apply the property to the plaintiff's use, and so mitigate the damages. It is true he committed a trespass, and must have a verdict against him; he could not of course, by his own act, apply the goods taken to the payment of his own claim, or that of others, against the defendant, without his consent. But the subsequent attachment is not his act; it is the act of law operating for the benefit of the plaintiff, by legally satisfying his debts to defendant and other applying creditors; and this implies consent.

If the distinction made in the New York cases were sustained, it would work gross injustice. After the property had been fairly and legally taken from his hands, and applied to the satisfaction of the owner's debts in due form of law, and with notice and opportunity of defence, the defendant below would still be forced to repay to the plaintiff their full value.

It is unjust and unreasonable that the taker of goods by mistake should be debarred from pursuing that legal remedy, which it is admitted any *other* person might obtain. The law is open to all, and its operation is not the act of the suitor who properly seeks its aid.

It may be further urged that this evidence is not admissible under the general issue.

Matters of justification must of course be specially pleaded, but here no justification is attempted; the evidence was offered simply in mitigation of damages. Matters in mitigation of damages cannot be specially pleaded. Such plea would be bad. 1 *Chit. Pl.* 442; 2 *Greenl. Ev.* § 274

*Nixon*, for the defendant.

I. The evidence cannot be received under the general issue. There must be a special plea or the general issue and notice. 11 *J. R.* 132.

II. The evidence is inadmissible upon principle. It is permitting a party to take advantage of his own wrong. The rule is well settled in the state of New York against the admissibility of the evidence. 17 *Wend.* 91; 21 *Wend.* 394; 24 *Wend.* 379.

The CHIEF JUSTICE delivered the opinion of the court.

In the action of trespass *de bonis asportatis* damages are allowed upon two grounds, *viz:* 1. By way of compensation for the loss of the goods. 2. As vindictive or exemplary damages for a wanton or malicious injury to the rights or feelings of the plaintiff, as a public example to prevent a repetition of the act. Where the trespass is accompanied by no circumstances of aggravation, the value of the property to the plaintiff at the time of the injury, with interest, furnishes ordinarily the measure of damages. *Pacific Ins. Co.* v. *Conrad, Bald.* 138 ; *Sedgwick on Damages* 549.

Where there are no circumstances of aggravation where vindictive or exemplary damages are not claimed, the measure of damages is *compensation to the plaintiff for his loss.* And hence, when the goods taken by the trespasser are restored to the plaintiff, and accepted by him, that fact may be shown in mitigation of damages. It will not, indeed, justify the *tort* nor absolve the *tort-feasor* from the legal consequences of his wrongful act ; but it will show that the plaintiff has sustained less injury, and is consequently entitled to less damages by way of compensation than he otherwise would have been. 2 *Rolls' Ab.* 569, *pl.* 3 ; *Com. Dig. " Trespass " B* 4 ; *Bac. Ab. " Trespass " E* 2.

So if the property, while in the hands of the trespasser, be attached or taken in execution upon process issued at the suit of a third party against the owner of the goods, and they be thus applied *by sanction of law* in satisfaction of the owner's debt, or otherwise for his benefit, that fact, the cases agree, may be shown in mitigation of damages. *Higgins* v. *Whitney,* 24 *Wend.* 379 ; *Squire* v. *Hollenbeck,* 9 *Pick.* 551 ; *Sherry* v. *Schuyler,* 2 *Hill* 204 ; *Irish* v. *Cloyes,* 8 *Verm.* 30.

But it is said, that although if taken out of the hands of the wrongdoer by legal process at the instance of a third party, that fact may be shown in mitigation of damages; the rule does not apply where the process is sued out by the trespasser himself, because the trespasser cannot mitigate damages by showing that he had himself applied the property to the owner's use without his consent. *Hanmer* v. *Wilsey,* 17 *Wend.*

91; *Otis* v. *Jones,* 21 *Ib.* 394; *Higgins* v. *Whitney,* 24 *Ib.* 379.

So far as the question of *compensation* to the plaintiff is concerned, it is obviously immaterial whether the goods are taken from the wrongdoer by process sued out by the wrongdoer himself or by a third party. In either event they are applied to the plaintiff's use, and his loss, by reason of the trespass, is diminished as much in the one case as in the other. Upon the mere question of compensation, the distinction sought to be established is without foundation. If the distinction exist, it must rest upon principles of policy or upon some ground distinct from the mere right of the plaintiff to compensation for his loss.

And it was accordingly held by the Supreme Court of New York that the evidence was inadmissible, because the trespasser cannot by any act of his own, without the plaintiff's consent, relieve himself from the consequence of his *tort,* or deprive the plaintiff of redress for the injury inflicted. It is true that the trespasser cannot by his own mere act either restore the property to the plaintiff, or apply it to his use, without his consent. Nor can the trespasser appropriate the property wrongfully seized either to pay a debt due to himself or to any other creditor, except by consent of the debtor or by sanction of law. But where the goods are seized in the hands of the trespasser by legal process, and applied to the payment of the debts of the owner, they are not so applied by *the act of the tort-feasor,* but by act and operation of law. And, upon principle, it is perfectly immaterial whether the machinery of law be set in operation by a third party or by the *tort-feasor* himself. In either event the property of the plaintiff, unlawfully taken from his possession, is by sanction of law taken from the trespasser, and applied to the use of the owner. As a matter of right and justice, therefore, he is entitled to so much less damages as a compensation for his injury.

It is clear, moreover, that the ownership of the goods is unchanged by the *tort.* They remain in the hands of the trespasser liable to be seized by legal process against the owner, and thus appropriated to his use. Any creditor may thus sue

out process, seize and appropriate them. It cannot be contended that the trespasser has forfeited his rights as a creditor, or that he has not the same right to sue and attach the goods as any other creditor has. And if the goods may thus be legally taken from the defendant's possession, and applied to the plaintiff's use, it is difficult to conceive of any rule of law or principle of justice which would compel the trespasser to respond for the value of the goods, or permit the plaintiff to recover their full value, by way of compensation.

In the case now under consideration, the goods were originally seized by virtue of an attachment issued by a justice. for an amount beyond his jurisdiction. The process was consequently void, and the plaintiff in the attachment and the officer who served the process became liable as trespassers. It cannot be denied that the plaintiff had a right to sue out a second and valid attachment, and that it was not only the right, but the duty of the officer to attach the same goods to answer the claim of the plaintiff. And if, by operation and judgment, of law, the goods were applied to the plaintiff's use, his damages resulting from the unlawful act were *pro tanto* diminished, and it would seem to be perfectly immaterial, so far as the question of damages resulting from the trespass is concerned, whether the attachment was sued out by A. or by B., or whether the property was applied to pay a debt of the plaintiff or of any of the creditors who came in under the attachment.

The force of the objection consists in the position, that the act of the wrongdoer, after the trespass has been committed, and the right of the plaintiff to redress is consummate, cannot divest the plaintiff of any part of his remedy. It is not contended that it can purge the *tort*, but merely that it may qualify the injury which the plaintiff has received.

There are numerous authorities which, by analogy, sustain the position.

Thus, in an action by an executor against an executor *de son tort*, the defendant may show in *mitigation of damages* the due payment of the debts of the decedent. *Whitehall* v. *Squire, Carth.* 104; 2 *Saund. P. and E.* 888; *Buller's N. P.* 48.

He cannot plead in justification payment of the debts to the value of the goods ; but, upon the general issue, those payments shall be recognized in damages.    2 *Phil. Ev.* 125.

In *Prescott* v. *Wright* (6 *Mass.* 20), which was an action of trover by a defendant in execution against a constable who levied the execution after it was returnable, the court held that the levy was without legal authority and a conversion. "But," say the court, "as the defendant paid a debt due from the plaintiff out of the proceeds, this fact may mitigate the damages." The same principle was adopted in *Caldwell* v. *Eaton,* 5 *Mass.* 404.

In *Pierce* v. *Benjamin* (14 *Pick.* 356), the plaintiff sued in trover for goods taken and sold by a tax collector under a tax warrant. The goods were sold in violation of law, and the proceeds applied in part payment of the plaintiff's tax. It was held that the defendant, by virtue of his unlawful proceedings, became liable as a trespasser *ab initio,* but that the amount of the proceeds of the sale applied toward the payment of the plaintiff's tax must be deducted from the value of the goods in ascertaining the amount of damages.

The court say, "The general rule of damages in actions of trover is unquestionably the value of the property taken at the time of its conversion. But there are exceptions and qualifications of this rule, as plain and well established as the rule itself. Whenever the property is returned, and received by the plaintiff, the rule does not apply ; and when the property itself has been sold, and the proceeds applied to the payment of the plaintiff's debt, or otherwise to his use, the reason of the rule ceases, and justice forbids its application. In all such cases the facts may be shown in mitigation of damages." Accord *Blake* v. *Johnson,* 1 *New Hamp.* 91.

Judge Greenleaf, one of the most accurate of elementary writers, lays down the rule with equal clearness : "If the property, in whole or in part, has been applied to the payment of the plaintiff's debt, or otherwise to his use, this may be considered by the jury as diminishing the injury, and consequently the damages."    2 *Greenl. Ev.* § 276.

The rule, it may be admitted, is too broadly stated. The un-

authorized appropriation by a trespasser of the goods wrongfully taken to pay the owner's debts, it may be, would be inadmissible in evidence in mitigation of damages. But if the goods wrongfully taken be thus appropriated, either by the consent of the owner or by sanction and operation of law, there would seem to be no just ground for questioning the soundness of the principle. In *Lamb* v. *Day and Peck*, 8 *Verm.* 407, the plaintiff brought an action of trespass against the attaching officer and the plaintiff in attachment for unlawfully using a horse, the property attached. The plaintiff in attachment subsequently recovered judgment, and the horse was sold, by virtue of an execution, in satisfaction of the judgment. The defendants were held trespassers *ab initio* by reason of the unlawful use of the horse. But the court said, "placing the liability of the defendants on the footing of the original taking as an act of trespass, still the ultimate disposition of the horse is material to the question of damages; and as the property was applied in satisfaction of the plaintiff's debt, that circumstance serves to reduce the damages accordingly."

In *Stewart* v. *Martin*, 16 *Verm.* 397, the constable, having seized property by virtue of mesne process of attachment out of his jurisdiction, was sued in trespass for such taking. It was held that the defendant might show, in mitigation of damages, that, having taken the property to a place within his jurisdiction, he attached it there, on the same process as the property of the same debtor, after the action of trespass had been commenced against him. The same rule was adopted in *Board* v. *Head*, 3 *Dana's Rep.* 489, 494.

So in *Briggins* v. *Grove*, *Cromp. & J.* 36, it was held that where a distress was taken and sold unlawfully without previous appraisement, the party distrained on can only recover the value of the goods distrained less the amount of rent due, though he may recover special damages for the illegal sale.

It is true it was held in *Sowell* v. *Champion*, 6 *Ad. & El.* 407, that where goods are seized under process upon a regular judgment in a place to which the process did not run, the plaintiff might recover the whole value of the goods, and not the mere damages sustained by their being taken in a wrong

place.   In delivering the opinion, Denman, C. J., says, " parties are not to extort what is justly due by the improper execution of a warrant." That may well be.   But it must be borne in mind that exemplary or vindictive damages  may in all  proper cases be given for a trespass committed under color of legal process.   And whenever a plaintiff, or the officer serving process, shall wantonly or injuriously attach or take in execution the property of the defendant without lawful authority, a jury may repress the evil and redress the injury by awarding exemplary damages.   But it is not perceived that a regard either for public justice or the rights of individuals can require that a plaintiff who sues out process in good faith which proves to be void, or the officer who executes such process, shall be thereby estopped from suing out or executing valid process upon the property thus wrongfully taken, or that the party injured shall be thereby entitled to recover the full value of the property in damages, although they were lawfully appropriated in satisfaction of his own debt.

If the evidence be competent by way of mitigating damages, it is clearly admissible under the general issue.   It could not be specially pleaded.   Pleas in bar are in discharge of the action, and every plea must be pleaded to the action.   A plea to the damages merely is vicious.   Matters in mitigation, therefore, cannot be pleaded, and can only be given in evidence under the general issue.   2 *Greenl.* § 625 ;  1 *Chit. Pl.* (7th ed.) 539, 541 ; *Demick* v. *Chapman*, 11 *J. R.* 132.

The judgment must be reversed, and a *venire de novo* awarded.

CITED *in Outcalt* v. *Durling*, 1 *Dutch.* 448.