By the Court,

Bronson, J.
It was sufficient, to maintain the action of trespass, that the plaintiff had the actual possession of the horse at the time of the illegal taking. The defendant did not attempt to justify under nor in any way to connect himself with Colgrove, the mortgagee of the horse; and it is no'answer in trespass de bonis asporlatis to show property out of the plaintiff in a stranger (Demick v. Chapman, 11 Johns, R. 132. Cook v. Howard, 13 id. 276). The evidence in relation to the mortgage was properly overruled.
Should the offer to return the horse have been considered by the jury in mitigation of damages? The plaintiff’s right of action was not only complete before the offer was made, but the suit was actually commenced, and no offer was made to pay the costs that had accrued. It is said that the suit was not commenced, because the declaration had only been filed and a rule entered to plead; and the service of a copy on the defendant was not made until after the offer to return (2 R. S. 374, § 1, subd. 3). Although the action was not for every purpose commenced before the property was [93] restored, the necessary incipient measures had been taken by employing an attorney, and the drawing and filing of the declaration. The plaintiff had incurred costs; and if the offer to return the property had been received in mitigation of damages, the plaintiff would have been substantially defeated in a good cause of action, and been compelled to pay costs to the defendant. The plaintiff was no doubt very diligent in commencing legal *55 proceedings, but the defendant was irregular, and acted at his peril in taking the property.
But independent of the fact that the plaintiff had commenced legal proceedings, there was no ground for mitigating the damages. The horse had been wrongfully taken, and the plaintiff had a right to insist on being paid the value. The actual return of the horse to the plaintiff’s stable, without his assent, was a matter of no legal consequence. If the'plaintiff had consented to receive the property, it would not have defeated his action altogether. It is not a defence which can be pleaded; it only goes to the question of damages (Vosburgh v. Welch, 11 Johns. R. 175; Gibbs v. Chase, 10 Mass. R. 128). The plaintiff refused to receive the property, and insisted on his legal right to recover the value as well as damages for the illegal taking. It can make no difference in principle that the horse was only kept a short time. The injury was complete, and the plaintiff’s right of action was as perfect the moment after the horse was first led from his stable, as it could have been after the lapse of a month or a year. The defendant could not by any act of his own, without the plaintiff’s consent, defeat the action.
I was at first inclined to the opinion that the second taking of the horse on valid process against the plaintiff, might be regarded as equivalent to an acceptance of the property when tendered,, and that the damages should be mitigated on that ground. It may be doubted whether this question can properly be made on the bill of exceptions; but waiving that consideration, the return and subsequent retaking of the property could not change the plaintiff’s rights. They were complete, and he has done nothing to relinquish them. He said, in effect, to the defendant, you have wrongfully taken my property; I will not receive it back; do with it what you please; [94] I insist on my remedy by action. There is I think, no legal principle upon which the defendant by any mere act of his own, could get rid of the difficulty. If the horse had not been returned to the plaintiff’s stable, the levy of the second attachment could not have ■ altered the case. It was a matter of no moment to the plaintiff what became of the horse after the original illegal taking. Replacing the animal in the plaintiff’s stable without his assent, was a nugatory act; it could no more operate to prejudice the plaintiff than any other disposition which the defendant might have made of the property.
Judgment affirmed.