## OTIS *vs.* JONES.

Where property is *wrongfully taken,* the subsequent appropriation of it by a sale under an execution in favor of the *wrong-doer,* will not save the party from answering in *damages* to the *full value* of the property.

Whether, if the property, after the original taking, had been seized and sold under an execution in favor of a *third person* against the *owner,* such fact might not have been shown in mitigation of damages, *quere.*

THIS was an action of *trover* for a pair of horses of the value of $110, tried at the Clinton circuit in January, 1837, before the Hon. JOHN WILLARD, one of the circuit judges.

The defendant, *Jones,* being the assignee of a note made by the plaintiff, *Otis,* and payable to one *Rodolphus M. Farnum* in boots and shoes, obtained an attachment *in his own name* from a justice of the peace against *Otis,* on which process, a constable took the horses in question from the possession of *Otis* and delivered them to *Jones* for safe keeping. This was in *April* or *May,* 1836. On the return of the attachment, *Jones* produced and declared on the note; but as it was not negotiable, the suit, by advice of the justice, was discontinued, and *Jones* sued out a new attachment in the name of *Farnum* the payee of the note. On the return of this attachment, the justice inadvertently entered the suit and judgment on his docket as though *Jones,* and not *Farnum,* was the plaintiff, although all the papers showed that *Farnum* should have been mentioned on the docket as plaintiff. The judgment was for about seventy dollars, damages and costs. On the 27th May, 1836, an execution was issued on the judgment, naming *Jones* as the plaintiff, on which the horses were sold about the first of June, and purchased by *Jones* for $39. After the return of this execution, the justice discovered the error in his docket, and corrected it by naming *Farnum* as plaintiff; and on the

Otis v. Jones.

31st August, 1836, issued execution on the judgment as amended, on which the horses were again sold about the first of September, and again purchased by *Jones* for $36. The constable testified that he took the horses by direction of *Jones*, and put them into his hands for safe keeping, where they remained from the time they were taken on the first attachment until after the return of the second execution, except that they were twice taken away by the constable to sell at auction. *Jones* made some use of the horses, but they were in better condition at the time of the last sale than they were when first attached. This suit was not brought until after the *second sale.*

The judge decided that the effect of the second sale, which was legal, was to mitigate the damages, and would prevent the plaintiff from recovering any more than nominal damages. The plaintiff excepted, and the jury, by direction of the judge, found a verdict in his favor for six cents. The plaintiff now asks a new trial.

*A. C. Hand,* for the plaintiff.

*G. A. Simmons,* for the defendant.

*By the Court,* BRONSON, J. Assuming that the first and second attachments were both regular, still the sale of the horses in *June,* on an execution in favor of *Jones,* when there was no judgment to support the execution, was clearly wrongful, and a conversion of the property. *Reynolds v. Shuler,* 5 Cowen, 323. And besides, Jones was himself the purchaser at the sale, and held the horses about three months under this void title. It is impossible to deny that there was a conversion. Indeed it was so ruled at the circuit.

But the judge held that the second sale, which took place in *September,* and on the execution in favor of *Farnum,* was legal; that the effect of the sale was in mitigation of damages, and that the plaintiff was only entitled to a verdict for the nominal sum of six cents.

Assuming what we do not intend to decide, that the justice had in this case the power to amend his docket and

issue a new execution, and that the second sale was consequently legal, still I think the plaintiff has a right to complain of the rule of damages. He had been wrongfully deprived of his property in *June*—his right of action was then complete, and had the suit been brought at any time within the three months which elapsed before the second sale, it is admitted that he would have been entitled to recove· the full value of the property. How has he lost that right? The statute of limitations has not run, nor has the plaintiff done any act whatever to bar or prejudice his claim. How then has he lost every thing but the mere form of a remedy? The argument is, that by the second sale, on legal process, the property has in effect been applied to the plaintiff's use, and therefore he ought only to recover nominal damages. The answer is, that a wrong-doer cannot discharge himself by any act of his own, without the assent of the injured party.

But suppose there was no tort in the case, and the question arose in an action of assumpsit. Although by means of the second sale the sum of $36, for which the property was struck off, may have been applied to the plaintiff's use, by way of satisfying so much of his debt, yet as that benefit was conferred without request, it could create no legal obligation on the part of the plaintiff to refund, or in any other way account for the money. *Bartholomew* v. *Jackson*, 20 Johns. R. 28. If the defendant could not in an action recover the value of a benefit thus conferred on the plaintiff, he cannot do the same thing in another form, as by setting it off or using it by way of satisfaction in an action brought against him by the plaintiff. If this could not be done in assumpsit, it surely cannot be allowed in an action of trover.

By procuring a sale on legal process, the defendant cannot be better off than he would be if he had offered to restore the property to the plaintiff. And yet no tender will, at the common law, either bar an action for a tort, or take away the right to full compensation in damages. The case of *Hayward* v. *Seaward*, 1 Moore & Scott, 459, does not proceed on the ground that a tort can be cured by a tender without acceptance, but on the ground that there had been no conversion of the property. In the case of *Hanmer* v.

*Wilsey*, 17 Wend. 91, we had occasion to consider the effect, both of an offer to restore property which had been wrongfully taken, and of a subsequent sale of the property on legal process against the owner. We came to the conclusion that neither the tender nor the subsequent sale could in any way affect the remedy of the party whose property had been tortiously taken. It is true, that the owner in that case had commenced an action for the injury before either the tender or the sale was made. But that cannot alter the principle. We think the case of *Hanmer* v. *Wilsey* was rightly determined, and that it is decisive of the point under consideration.

Had there been a sale before suit brought, on legal process against the plaintiff in favor of some person other than the wrong-doer, that would have presented a question which we are not now called upon to decide. *Irish* v. *Cloyes*, 8 Vermont R. 30. In this case although *Farnum* was the nominal plaintiff in the second execution, the defendant *Jones*, was the real party. He owned the debt, and procured the rendition of the judgment on which the execution issued.

New trial granted.