THOMAS COFFIN *vs*. THOMAS B. FIELD & others. ALFRED FOLGER *vs*. THE SAME. JOB COLEMAN *vs*. THE SAME. THE SAME *vs*. GEORGE EASTON & others. MARK FOLGER *vs*. THE SAME. EDWARD W. GARDNER *vs*. OLIVER W. EASTON & others. PHILIP H. FOLGER *vs*. JOSEPH VINCENT & others. HIRAM FOLGER *vs*. THE SAME.

The action of replevin, given by the Rev. Sts. c. 113, § 17, to one whose beasts are unlawfully distrained or impounded, does not exclude all other remedies at common law; trespass will still lie.

Actual knowledge, by the owner of beasts impounded, of the impounding thereof, is not equivalent to the written notice required by the Rev. Sts. c. 113, § 8.

The owner of beasts impounded does not waive the right to maintain trespass against the field-drivers by whom the beasts were taken and impounded, on the ground of irregularities or omissions in their proceedings, by paying the fees of the field-drivers and pound-keeper; nor by declaring to a third person, after the commencement of the action, that he should require the defendants to prove that the place where they took the beasts was a public highway.

THESE were actions of trespass *de bonis asportatis*, for taking and carrying away certain animals, (mostly sheep,) belonging respectively to the several plaintiffs. The defendants were field-drivers of the town of Nantucket, and justified the acts alleged against them, on the ground that the animals, described in the several writs, were going at large on the highways in Nantucket, contrary to law. The cases were all tried in the court of common pleas, before *Hoar*, J.; and verdicts being rendered therein for the plaintiffs, the several defendants alleged exceptions.

The first action was for taking and carrying away a bay mare on the 13th of June, 1848; and it was in evidence that

the plaintiff was the owner of the mare, and that she was taken up, while going at large on the highways in Nantucket, and not under the care of a keeper, by the defendants, as field-drivers, and by them impounded in the town pound. The mare, while on the way to the pound with other horses, was seen and recognized by the plaintiff's son, who, without pointing her out, offered to take her then, and pay the fees, if the defendants would give him a receipt. The defendants offered to give up the mare, but declined giving a receipt, on the ground, that the time and place were inconvenient for the purpose; and the mare was thereupon driven to the pound, and afterwards sold. An advertisement of the taking and impounding was inserted in the Nantucket Inquirer, a newspaper published in Nantucket, on Thursday, the 22d of June, and for three weeks successively thereafter, the last publication being on Thursday, the 12th of July, 1848. Application for the appointment of appraisers was made, and the appraisement took place on the same 12th of July. The sale was made on the 15th of the same month, having been previously advertised in the same newspaper. A notice of the taking and impounding of ten or more horses, among which was the mare in question, was also posted up in some public place in Nantucket, on some day between the 10th and 16th of June, 1848; but the notice contained no description of the animals. It was also in evidence, that after the making of the writ in this action, the plaintiff declared, "that his son was present when the mare was taken, and that the field-drivers had returned that they had taken up the mare on the highway at the north crossing of Long Pond, but there was no highway there, and that they had got to prove."

The defendants contended, and requested the presiding judge to instruct the jury that, upon the foregoing facts, the plaintiff's only remedy was by an action of replevin; that if the plaintiff, at any time previous to the sale, had notice of the impounding, and of the cause of it, no other notice was necessary; that no subsequent irregularities or omissions would make the defendants trespassers; and that the plaintiff, by making the declaration, " that the field-drivers had returned

that they had taken up the mare at the north crossing of Long Pond, but there was no highway there, and that they had got to prove," had waived all such irregularities and omissions, if there were any. The presiding judge declined so to instruct the jury, but did instruct them, that if the value of the mare exceeded $30, the sale took place too soon; that if her value was less than $30, too late; and that the sale was illegal, and a fatal objection to the defence.

In the other cases, some one or more of the points above stated were taken and relied upon by the defendants, and overruled by the presiding judge.

In the cases of *Folger* v. *Easton*, and *Gardner* v. *Easton*, it appeared that the plaintiff, after the taking and impounding of his sheep, went to the pound and took them out, first paying the pound-keeper's and field-driver's fees. The defendants thereupon contended, and requested the judge to instruct the jury, that such payment and taking away constituted an abandonment or waiver by the plaintiff of any right of action. But the judge ruled otherwise.

The cases were argued in writing.

*H. G. O. Colby*, for the defendants, cited, to the point that trespass would not lie, Rev. Sts. *c.* 113, §§ 16, 17; Minot's Digest, Actions, I. 1, 2, 4, 5, 8; *Elder* v. *Bemis*, 2 Met. 604; *Osborn* v. *Danvers*, 6 Pick. 98; *Anscomb* v. *Shore*, 1 Taunt. 261; *Sheriff* v. *James*, 1 Bing. 341, and 8 Moore, 334; *Six Carpenters' case*, 8 Co. 146; and, to the point that actual notice was sufficient, *Wild* v. *Skinner*, 23 Pick. 251; *Gilmore* v. *Holt*, 4 Pick. 258.

*L. F. Brigham* and *E. M. Gardner*, for the plaintiffs.

BIGELOW, J. These are actions of trespass *de bonis asportatis*, in which the defendants, as field-drivers of the town of Nantucket, seek to justify the taking of the animals described in the writs, on the ground that they were going at large, contrary to law.

The first and chief ground of exception to the ruling of the court below is, that the only remedy for a party, whose beasts have been unlawfully distrained and impounded by a field-driver, is by an action of replevin. This objection proceeds

upon the idea, that as the remedy by replevin is given in such cases by Rev. Sts. *c.* 113, § 17 *& seq.*, it operates to exclude all other remedy at common law. But this is an obvious misapprehension. When a statute confers some new right, and prescribes a remedy for a violation of that right, then the remedy thus prescribed, and no other, is to be pursued. But where a remedy existed at common law, and a statute creates a new remedy in the affirmative, without a negative, express or necessarily implied, a party may still seek his remedy at common law   1 Chit. Pl. (6th Am. ed.) 127, 164; *Colden* v. *Eldred*, 15 Johns. 220. › The cases at bar clearly come within the latter rule. It is well settled, that a party who justifies the taking of another's property, under legal authority or process, must show that he has acted strictly in conformity with the requirements of law; otherwise, he will be considered a trespasser *ab initio*, and liable to an action of trespass at common law. The defendants, in all the above cases, having either failed to show that the beasts were liable to distress and impounding, or omitted, in some essential particular, to comply with the requisitions of the statute, are trespassers, and liable in this form of action for the damages occasioned by their unauthorized acts. *Purrington* v. *Loring*, 7 Mass. 388; *Gilmore* v. *Holt*, 4 Pick. 258, 263; *Adams* v. *Adams*, 13 Pick. 387; *Smith* v. *Gates*, 21 Pick. 55. This remedy has been frequently adopted in this commonwealth, in cases like the present, without objection. *Gilmore* v. *Holt*, and *Smith* v. *Gates*, *ubi sup.*; *Brightman* v. *Grinnell*, 9 Pick. 14; *Sherman* v. *Braman*, 13 Met. 407. See also *Folger* v. *Hinckley*, 5 Cush. 266.

The cases above cited are decisive of another exception taken by the defendants. They contended at the trial, and have argued here, that actual knowledge by the plaintiff, of the taking and impounding, was equivalent to the written notice required by Rev. Stat. *c.* 113, § 8, and rendered the latter unnecessary. But it is clearly settled otherwise. The defendants, having acted under an authority vested in them by law, are bound to comply with all the terms and conditions upon which it was granted. They must show that all their doings have been in entire conformity with the provisions of the

statute; because, if a departure from the requisitions of law is once allowed, there will be no rule by which to regulate the proceedings in such cases. The defendants, therefore, cannot discharge themselves of their legal obligation, by showing that the plaintiffs had notice, derived from other sources, of all the facts which the statute requires to be made known to them by the defendants, in writing. If it were so, a verbal notice would be sufficient, and the statute would be rendered inoperative and useless. The plaintiffs had a right to insist on the precise notice required by law. Upon it their rights and remedies might materially depend; and unless, by their acts or declarations, they have misled the defendants, and induced them to omit it, the failure to give the written notice, in the manner required by the statute, was a fatal defect in the proceedings, and deprives the defendants of their justification.

The remaining exception, founded on the refusal of the court to rule that there was a waiver by the plaintiffs of all irregularities and omissions in the proceedings, cannot be sustained. In the first place, the question of waiver is one of fact, and not of law, depending upon the acts and intentions of the parties and all the circumstances of each particular case, upon which it is the proper province of the jury to pass, and not of the court to rule. But, in the next place, we can see no evidence from which such waiver could be fairly inferred. The declaration of the plaintiff, in the first of these cases, to a third person, after the commencement of the suit, that he should require the defendants to prove that the place where his horse was taken was a highway, cannot be construed into any waiver of an irregularity in the subsequent proceedings. It had no reference to them, and was a statement entirely consistent with the right to object to the doings of the defendants, after they had taken and impounded the horse. In all the other cases, the taking of the animals from the pound-keepers by the plaintiffs, and the payment of the fees to him, were acts in the exercise of a legal right, and the only mode by which the plaintiffs could gain possession of their property, without resort to legal process. Rev. Sts. c. 113, §§ 3, 7. It cannot

therefore be regarded as a waiver of their right to damages against the field-drivers, for their previous tortious acts. Besides; the rule of law is well settled, that the return of property, wrongfully taken, to the owner's possession, and his acceptance of it, is available to the wrong doer only in mitigation of damages, and not in bar of the action. 2 Greenl. Ev. § 635 *a; Hammer* v. *Wilsey,* 17 Wend. 91. Surely the defendants ought not to object, that the plaintiffs took back their property, and now claim only such damages as they have sustained by the wrongful acts of the defendants in taking and impounding the animals, instead of leaving them in the pound to be sold, and claiming their full value of the defendants in actions of trespass.          *Exceptions overruled.*