## HEATH *v.* WEST & *a.*

Where personal property is sold and a mortgage given back to secure the purchase money, it is in law one transaction, and the mortgage cannot be rescinded without the sale being consequently rescinded also.

An infant, who has bought personal property and given a mortgage to secure the purchase money, or a part of it, cannot avoid the mortgage under the plea of infancy, without rendering void the sale and losing his rights under it.

Where an infant purchased a horse and paid $75 as part of the consideration, and at the same time gave his notes and a mortgage upon the horse to secure the balance—*held*, that he could not repudiate the mortgage and hold the horse against the mortgagee, or maintain trespass against him or his assignee for taking the horse by virtue of the mortgage; that the repudiation of the mortgage operated to nullify the sale, and consequently he could not hold the horse under the sale.

In order to maintain trespass for personal property, the plaintiff must have possession, either actual or constructive, at the time the wrongful act is committed.

TRESPASS for a horse, which the plaintiff purchased of one Dennison, paying $75 in cash, and giving his notes, secured by a mortgage of the horse, for the balance. West defended as assignee of the mortgage to Dennison, to whom he had, at the plaintiff's request, paid the amount due thereon. Bellows defended as the servant of West.

West took the horse on the mortgage, and, to close it, advertised him for sale. At the time notified, the plaintiff was present and forbid the sale, claiming the horse as his property, free from the mortgage; and getting the possession of the horse, without the consent of West, took him away. West, claiming under the mortgage, re-took the horse, and for that taking this action was brought.

On the trial the plaintiff contended that he, being a minor at the time of the execution of the mortgage, it was avoidable by him, and he thereupon would have a right to the horse; and he requested the court to instruct the jury that by his forbidding the sale and claiming the horse as above stated, he avoided the mortgage, and thereupon had

a right to the possession of the horse, and having got possession, West had no right afterwards to take him from his possession without first offering to pay him the $75 which he paid Dennison in cash, at the purchase.

The court refused so to instruct the jury, but instructed them that the sale of the horse to the plaintiff and the mortgage from him back, being parts of the same transaction, the plaintiff, though a minor, had no right to avoid the one without avoiding the other, and could not hold the horse by the sale and yet avoid the mortgage.

West, when in possession of the horse under the mortgage, used him and castrated him, thereby, as the plaintiff said, impairing his value, though not rendering him valueless. The plaintiff contended that such use and castration was an abuse of West's rights under the mortgage, so as to render him a trespasser *ab initio*, and liable, as such, in this suit. But the court ruled otherwise.

A verdict was rendered for the defendants, and the plaintiff thereupon moved that the same be set aside and a new trial ordered, for alleged error in the rulings of the court.

*J. W. & G. C. Williams,* for the plaintiff.

Some new questions as to the principles governing the contracts of infants are required to be settled in this case. More particularly this: an infant purchasing property and paying a part of the purchase money therefor, but for the residue giving his note and mortgaging the property purchased, afterwards disaffirming the mortgage—in what situation are the parties thus placed? Is it this: " that the infant on his part having refused to perform an essential part of an entire contract, (by disaffirming the mortgage,) the other party has a right to treat the contract as rescinded, notwithstanding the partial performance of the infant, if the infant can be placed in as good condition as before, by restoring to him what has been received?" or is it " that the contract being entire, the infant could not disaffirm the

mortgage without *ipso facto* dissolving the whole, so that he had no longer any right to the possession of the property purchased, and ought, in truth, to surrender it up immediately, and failing to do so, the seller had a right to re-take the property, without repaying the purchase money received and restoring him to the same condition as before?"

The latter was the opinion of the justice presiding at the trial of this case, and it is to that we except.

We suppose that the court, when this case was before them last, extended the doctrine of equitable assignment of mortgages very far, in order that the doctrine of infancy might not be too oppressive, but we cannot suppose it to be the wish of courts to entirely abolish the principle in its reasonable and equitable application, certainly not to place an infant making a contract in a worse position than he would otherwise have been if he had been an adult, making his very infancy a misfortune to him.

What was the effect of the former opinion of the court in this case may perhaps not be fully understood by us. Whether West, being found to be assignee of the mortgage, is thereby placed in the very shoes of Dennison, the seller, so as to have all the rights of the seller, and thus, as it were, to be made a party to the original contract of sale, is a question which we refer to the opinion of the court, as arising at the threshold of this case.

But granting that West stands in the place of the seller, Dennison, then this is his position: He has sold a horse to a minor, received a portion of the purchase money, $75, also a note secured by a mortgage of the property for the balance; the infant finding that he has in his indiscretion bargained at too great a price, for instance, and being unwilling to complete the contract, or at least to allow the taking of the property from him on the mortgage, seeks to relieve himself from his bargain. What is his course? If he disaffirms the mortgage, as it has been settled he may do, does he thereby lose all right to the possession of the horse,

and is his only way to get rid of an improvident bargain, to lose the $75 he has already paid and give up the horse, or otherwise be compelled to go on and complete the full payment of the price agreed? If this be law, it is hard to see what protection is afforded by the doctrine of infancy. He is in a worse position than an adult would be, making the same contract; for suppose an adult to have made the same purchase, and to have given back a mortgage which failed on account of its wanting some of the forms required by the mortgage law, and he should on that account defend against the mortgage, the court would apply the principle, now well established, that the mortgage being such that no action could be maintained upon it, and it being an essential part of an entire contract, the seller may restore what he has received, and for the sake of the remedy treat the contract as rescinded. *Luey* v. *Bundy*, 9 N. H. Rep. 298.

Now is the minor, avoiding his mortgage on account of minority, to be in a worse condition than the adult avoiding his, on account of the statute of frauds, or some other technicality? Is not the doctrine of the rescission of contracts sufficiently broad, and as well applicable to infants as to others? Herein we think that the court at the trial mistook the principle involved in this case. The sale vested the property in the infant. His mortgage back was voidable. The infant disaffirmed the mortgage; still, the court speak of West's retaking the horse on the mortgage; but the mortgage was then null by the disaffirmation of the infant. West could not re-take the horse except upon the principle before stated; that is, treating the contract as rescinded on account of Heath's refusing to perform an essential part of the contract, notwithstanding the partial performance of Heath, and restoring the money received in part payment. This, we contend, is the doctrine of the rescission of contracts. *Luey* v. *Bundy*, 9 N. H. Rep. 298; 2 Kent's Com. 480; *Hunt* v. *Silk*, 5 East. 449.

The attention of the court is also called to the fact that

the infant has never disaffirmed the note secured by the mortgage, nor defended against its payment, but has only disaffirmed the particular enforcement of the debt by the mortgage.   Whatever may be the effect of this fact in the case, it would  seem that the  application of the doctrine of the rescission of contracts, as above defined, to the contracts of infants, is in every way agreeable to analogy and sound equity ; but we find few cases where there have been previous partial payments, so as to raise the particular question of this case.

An infant cannot demand the return  of property sold by him until he shall first return the consideration received. *Holmes* v. *Blagg*, 8 Taunt. 508 ; *Corpe* v. *Overton*, 10 Bing. 252 ; *Farr* v. *Sumner*, 12 Vt. Rep. 28 ; *Zouch* v. *Parsons*, 3 Burr. 1794.

As an infant in this case could  not have recovered the $75 without returning the horse, shall the defendant be permitted to take  the horse without returning the  $75 ?   It may well be inferred from the doctrine of our court making it necessary, in case an infant refuses to pay for property purchased but still in his possession, that the seller should first make a demand before he can himself re-take the property, or maintain an action to recover it, that the principle may be extended to require repayment of the part consideration, when it has been paid.   *Fitts* v. *Hall*, 9 N. H. Rep. 441.

The case most directly in point upon this exact question, that we have been able to find, is *Weed* v. *Beebe & a.*, 21 Vt. Rep. 500.   We think that in that case there is a clear recognition of the doctrine which we contend for here.

There seems to be no authority against an infant's being restored to his original position upon his rescinding a contract, except *Weeks* v. *Leighton*, 5 N. H. Rep. 343 ; and that was decided upon the ground that the infant should not be placed in a better position than an adult would be in such a case ; and that an adult could not recover in a case

like that. But that doctrine was discarded in *Britton* v. *Turner*, 6 N. H. Rep. 481. Besides, other tribunals have always held a different doctrine. *Moses* v. *Stevens*, 2 Pick. 332; *Vent* v. *Osgood*, 19 Pick. 572; *Judkins* v. *Walker & a.* 17 Maine Rep. 38; *Abell* v. *Warren*, 4 Vt. Rep. 149; *Thomas* v. *Dyke*, 11 Vt. Rep. 273; *Taft* v. *Pike*, 14 Vt. Rep. 405.

The authorities relied upon in *Weeks* v. *Leighton*, have also been overruled, so that it is hard to see upon what foundation that case now rests, and it is submitted whether it is now law in this State.

The second question raised in the case is, whether West, by use of the horse and castration, may be liable as a trespasser *ab initio?* Is the authority of the mortgagee so far given by law that this doctrine may be applied?

Personal mortgages are, in this State, a creature of the statute, and anomolous to the principles of the common law, and are regulated by statute.

The reason of the distinction being made between a license by a party and a license in law, as given in *Wendell* v. *Johnson & a.* 8 N. H. Rep. 222, seems to allow the propriety of the application to the case of mortgages which are so much the creature of law, or which are at least so much a joint license of law with that of the party. Certainly the right to sell the mortgaged property, which the defendant assumed to do, to a third person, is entirely a license of law. Rev. Stat. ch. 133, §§ 14, 15. No such authority is given by the party in his mortgage.

We think there *is* nothing in the fact that the injury complained of merely impaired the value without rendering worthless, that can weaken our position. The principle we contend for seems well laid down. *Barnett* v. *White*, 3 N H. Rep. 227; *Ferrin* v. *Simonds*, 11 N. H. Rep. 363; Croke James, 147; *Oxley* v. *Watts*, 1 D. & E. 12; 3 Willson 20; Yelv. 96.

Heath *v.* West.

*Burns & Fletcher, West* and *Benton,* for the defendants.

This case presents two questions. 1. Whether the plain-tiff having paid a part of the purchase money for the horse, and having given his note and a mortgage for the balance, could hold the horse against the assignee of the mortgage, without paying the amount due on the note and mortgage.

2. Whether the defendant, who was the assignee of the mortgage, by using and castrating the horse while in his possession under the mortgage, thereby became a trespasser.

In regard to the first point, we say, that if an infant buys goods and gives his note therefor, and rescinds the contract on the ground of his infancy, he cannot retain the goods, but the vendor can recover them in an action of trover. *Fitts* v. *Hall,* 8 N. H. Rep. 441.

So it has been held that a deed, and mortgage back, to secure the consideration money, must be considered as one transaction; and if the latter be avoided on account of in-fancy, the former becomes of no effect. *Roberts* v. *Wiggin,* 1 N. H. Rep. 75.

The law, as laid down in *Roberts* v. *Wiggin,* is directly in point to sustain the ruling of the court upon this branch of the case; and it is unnecessary to multiply authorities, as the good sense and equity of the doctrine is too apparent to require any reasoning or authorities to support it. *Weed* v. *Beede,* 21 Vt. Rep. 500.

Nothing is clearer than that a party cannot affirm an en-tire contract in part and avoid it in part. *Bigelow* v. *Ken-ney,* 3 Vt. Rep. 358; *Richardson* v. *Boright,* 9 Vt. Rep. 368.

2. Was the defendant, West, a trespasser, by using and castrating the horse? The case finds that West was in the possession of the horse, under the mortgage. That was a rightful possession, and Heath had no right to take the horse without the consent of West, unless he satisfied the mort-gage. West had not only the legal possession but an in-terest in the horse, and a mere alteration in the structure of the horse would not make him liable in an action of tres-

pass. Nothing short of a total destruction or sale of a chattel by one tenant in common would make him liable in trover. *Weld* v. *Oliver*, 21 Pick. 557.

West's possession was exclusive and rightful, and Heath had no right to the possession, and could not maintain either trespass or trover. *Holmes* v. *Bell & a.*, 3 Cush. 322.

EASTMAN, J. When this case was before this court at a previous term, it was held that the assignment of the mortgage, by Dennison to West, was good, and that West succeeded to the rights of Dennison. If, therefore, Dennison could successfully defend against the action, West can.

Where property is sold and a mortgage given back to secure the purchase money, it is in law one transaction. This is well settled in regard to real estate, and we see no reason why the doctrine should not be applied to personal property. *Roberts* v. *Wiggin*, 1 N. H. Rep. 73 ; *Robbins* v. *Eaton*, 10 N. H. Rep. 563 ; *Bigelow* v. *Kinney*, 3 Vt. Rep. 353 ; *Richardson* v. *Boright*, 9 Vt. Rep. 368 ; *Weed* v. *Beede & a.*, 21 Vt. Rep. 495.

Being one transaction, one part cannot be disaffirmed or rescinded, without the other being consequently disaffirmed or rescinded also. A party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be for his interest to fulfil.

Thus it has been held that an infant cannot avoid a mortgage and affirm a deed, when both are made at one and the same time, relate to the same property, and go to make up one transaction. If the mortgage be avoided under the plea of infancy, the deed becomes of no effect. *Roberts* v. *Wiggin*, 1 N. H. Rep. 73; *Richardson* v. *Boright*, 9 Vt. Rep. 368.

Upon these principles, the ruling of the court upon the first question presented was correct. The sale of the horse to Heath, and the mortgage back, were one and the same

transaction, and Heath could not avoid the mortgage without avoiding the sale.

West had the right to the property under the mortgage, so far as could be ascertained from the instrument itself, and the right to the possession of the property, and the same act on the part of Heath which would annul the mortgage, would also annul the sale. By rescinding the mortgage, he thereby annulled the sale, and hence had no right to the horse by virtue of the sale.

The act of Heath in taking possession of the horse was contrary to the terms of the mortgage, and contrary to his rights, and the act of West in reclaiming it was in accordance with the mortgage. And upon the facts presented in the case, the only way in which Heath could pretend to maintain trespass against West must be by repudiating the mortgage and treating it as an act of minority and void, and at the same time hold the horse by virtue of the sale. But the repudiation of the mortgage, necessarily, upon the principles laid down, wrought out the invalidity of the sale, and the sale being made invalid, Heath could have no property in the horse, and therefore no right of action for its being taken by West.

If, as is contended by the plaintiff's counsel, this doctrine is a hardship upon the minor, inasmuch as he has paid the $75, which are not required to be re-paid as a pre-requisite to the validity of the defence, it should be borne in mind that it is not West or Dennison who is seeking to repudiate the contract, but Heath. If it were Dennison or West who was endeavoring to rescind the contract, the argument of the counsel would hold good, and the $75 would have to be re-paid.

If Heath had wished to avoid the contract and recover the $75, he should have repudiated the whole transaction, both sale and mortgage, and demanded his money; or paid up the mortgage and then made a tender of the horse, and having done that he would be in a situation to recover all

that he had paid for him. His contract was to pay $75 cash, and give his notes, secured by a mortgage on the horse, for the balance of the purchase money; but instead of fulfilling his contract and paying the notes, he seeks by this action to hold the horse for $75, and to repudiate the notes and mortgage. This is the effect of the whole matter, and this, neither law nor equity will permit him to do.

In *Carr* v. *Clough*, 6 Foster's Rep. 280, the rights of an infant were somewhat examined, and we then held, among other things, that if an infant rescinds a contract made by him for the sale of personal property, and seeks to reclaim the property or its value, he must restore, or offer to restore the consideration received, before he can sustain an action for the property sold. By a parity of reasoning, which is *fully borne out by that case*, if an infant rescinds a contract for the purchase of property, and seeks to reclaim the consideration paid, he must restore the property, or offer to restore it, before he can recover the consideration.

There is, perhaps, another view which might be taken of the transaction between these parties. The case finds that West advanced the money to Dennison on the mortgage, at Heath's request, and hence the mortgage and the possession of the property under it by West, might be treated as security given for money lent to Heath; and consequently Heath could not reclaim the property until he had made a tender of the consideration.

In the second objection to the ruling of the court, no question of minority is involved; but the plaintiff claims that he has a right to maintain the action by reason of the defendant's acts in the improper use of the horse, and the injury done to him. But this position cannot be sustained. The plaintiff had no right to the horse after condition broken and possession taken, until the condition of the mortgage should be fulfilled; and when the injury complained of was committed, the animal was lawfully in the possession of the defendant, and for ought that appears, has been ever since.

The plaintiff had neither the possession nor right of posses-
sion, neither actual nor constructive, at the time the alleged
injury to the horse was committed, nor has he had any
rightful possession up to the time of the commencement of
the suit; and consequently he cannot maintain trespass
therefor. The doctrine of trespass *ab initio* does not apply.
*Clark* v. *Carlton,* 1 N. H. Rep. 110; *Hanmer* v. *Wilsey,* 17
Wend. 91; *Brainard* v. *Barton,* 5 Vt. Rep. 97; *Putnam* v.
*Wyley,* 8 Johns. 432; *Daniels* v. *Pond,* 21 Pick. 367; *Dal-
lam* v. *Fitler,* 6 Watts & Serg. 323; *Freeman* v. *Rankins,* 8
Shepl. 446.

In the matter of real estate, this question was settled by
this court in *Chellis* v. *Stearns,* 2 Foster's Rep. 312; and
the reasons given for that decision would seem to apply
with much force to the point here.

We entertain no doubt that the rulings of the court be-
low were correct, and there must consequently be,

*Judgment on the verdict.*