## SUPREME COURT.

### James Savage and others agt. Horace Perkins.

An action to recover the possession of personal property can now be brought, in the cases where replevin would lie, under the Revised Statutes.

Such an action is based upon the wrongful *detention* of the property; and such wrongful detention must exist *at the time of the commencement of the action*. But a person who has wrongfully delivered the property of another to a third person—even before the commencement of the action—may be said yet to wrongfully detain it.

The object of this action is the recovery of the property in *specie;* and if, *before suit brought*, the defendant unconditionally offers to restore the property, the object is already attained, and the suit is wholly ûnnecessary. Such offer is equivalent to a *tender* before suit brought. Although, in such actions, *damages* are recovered for the wrongful detention, yet they are merely incidents to the action.

If the plaintiff demands possession of personal property, which the defendant refuses to deliver, and before suit brought the defendant unconditionally offers to deliver the possession of it, the plaintiff, although he cannot maintain the action for the possession, may, nevertheless, have his action for the damages (if any) for refusing to deliver it when demanded, under § 167, (formerly *rover*,) for injury to property.

*Erie Special Term, March,* 1855.

Motion by plaintiffs for a new trial on a bill of exceptions.

The action was for the recovery of personal property, and was tried at the Erie circuit in January, 1855.

On the trial it appeared that the plaintiffs, being forwarders of goods on the Erie canal, from Albany to Buffalo, and having an office for the transaction of their business at both places, shipped at Albany, on board of a canal boat owned and navigated by the defendant, on his own account, the property in question, consigning it to themselves in Buffalo. The property was charged with $133.37 freight, payable to the defendant on its delivery to the consignee. After the defendant's boat arrived at Buffalo with the property on board, the defendant offered to deliver the property to the plaintiffs on being paid his freight. The plaintiffs declined receiving it then, for the

reason that several other boats, having cargoes consigned to the plaintiffs, which had arrived in port prior to the defendant's boat, were entitled to a preference; and the defendant could not discharge his cargo at the plaintiffs' storehouse until the cargoes of the other boats were discharged. After the defendant had remained in port three or four days, waiting for an opportunity to deliver the property, he made a claim for demurrage, and there was some controversy between the parties in relation thereto.

On the fifth day after the arrival, an agent of the plaintiffs' called on the defendant, and offered to pay him the amount of the freight, provided he would receive it in full of all charges. The defendant offered to take the money, but refused to receive it on those conditions, and the money was not paid. Nothing was said at this time about the delivery of the property.

On the morning of the same day—but whether before or after the money was offered, it did not appear—one of the plaintiffs called on the defendant and demanded a delivery of the property. The defendant refused to deliver it, unless his freight was first paid. No money was then tendered, but a friend of the plaintiffs', present at the time, said to the defendant, that when the property was out of the boat, so that it could be seen that it was all there, and in good order, the freight should be paid; but the defendant still refused to deliver it until his freight was paid.

Subsequently to all this, and about 4 P. M. of same day, (this being before the commencement of the action,) the defendant called upon the same plaintiff who had previously demanded the property, and said to him, that he might take the property. At this time the defendant's boat lay at the usual place of unloading.

The court charged the jury, among other things, that the defendant, having a lien upon the property for his freight, was not bound to part with the possession of it, except upon the payment of the freight; nor were the plaintiffs bound to pay the freight, except upon receiving the property. That a demand of the property by the plaintiffs would not put the de-

fendant in default, and subject him to an action for the non-delivery thereof, unless such demand was accompanied by an offer to pay the freight. That the demand made by one of the plaintiffs in person did not put the defendant in default, unless they should find, from the evidence in relation to the transaction, that the demand was accompanied with an offer to pay the freight.

The court further charged that if such a tender, demand, and refusal had been made, as to entitle the plaintiff to maintain the action, yet that an unconditional offer, subsequently and before the commencement of the action, made by the defendant, to deliver the property, barred the plaintiffs' right of action. To the last part of the charge. the plaintiffs excepted.

The jury found a verdict for the defendant, assessing the value of the property at $133.60.

DYER TILLINGHAST, *for plaintiffs.*
W. H. ANDREWS, *for defendant.*

By the court—BOWEN, Justice. The only question made on the argument was upon the exception to the last part of the charge. The plaintiffs' counsel claimed that if, by reason of the refusal of the defendant to deliver the property to the plaintiffs, after an offer to pay the defendant the amount of his lien thereon for the freight, a right of action had accrued to recover the possession of the property, such right of action was not divested by a subsequent unconditional offer by the defendant, before suit brought, to deliver the property; and in support of his position he cited *Hanmer* agt. *Wilsey,* (17 *Wend.* 91.) That was an action of trespass for the taking of a horse by a constable from the plaintiff's stable, by the defendant's direction, on an attachment in the defendant's favor, illegally issued by a justice of the peace. After discovering the error in the issuing the attachment, the constable returned the horse to the stable from which it had been taken, and gave the plaintiff notice thereof, when the plaintiff said he should not receive the horse.

The action was commenced by declaration, which was filed

Savage and others agt. Perkins.

previous to the return of the horse, but served afterwards. The court held, that the plaintiff was not bound to receive the horse when returned to his stable. That the plaintiff's right of action to recover the value of the horse was perfect the moment after it was first taken from the stable, and could not be defeated by any act of the defendant, without the plaintiff's concurrence. That if the plaintiff had received the horse, it would not have defeated the action altogether, but would have mitigated the damages to be recovered. The case cited lays down the true rule as applicable to an action of trespass, or under the Code, to an action for the wrongful taking of personal property. Where property is wrongfully taken from the possession of the owner, such taking is a conversion thereof, and the owner is under no obligation to receive it again. The same rule is doubtless applicable to an action of *trover*, or for the conversion of property, where the original taking was lawful, if the offer to return was after an *actual* conversion.

But a demand and refusal is only *evidence* of a conversion. It is evidence from which a conversion will ordinarily be inferred, but not under all circumstances. (*Hill* agt. *Covell*, 1 Coms. 522; *Hayward* agt. *Seaward*, 1 *Moore & Scott*, 459.)

The case last cited was an action of *trover* for a steamboiler and apparatus. The boiler was left by the plaintiffs on the defendants' wharf, and shortly thereafter the plaintiffs sent a barge to the wharf for it. The defendants refused to deliver it unless £55 5s was paid for landing, clearing, and shipping it on the barge. The plaintiffs then tendered £23 2s., and demanded the boiler. The defendants refused to accept the sum tendered, or to return the boiler.

Afterwards, the plaintiffs' attorney wrote to the defendants, that he was instructed to commence an action for the detention of the boiler; that the £23 2s. formerly tendered was ready to be paid, on the boiler, &c., being reshipped; that they had refused the sum tendered, and refused to deliver the property unless £55 5s. was paid, which was an exorbitant sum. The latter requested the defendants to give the name of their attorney, to whom to send the process, if the matter was not immediately settled.

Savage and others agt. Perkins.

On the next day the defendants' attorney wrote to the plaintiffs' attorney, that the plaintiffs might, at any time, take the boiler, &c., and that the defendants would resort to an action to recover the amount due them. On the same day the action was commenced.

The above facts being shown on the trial, and it being further shown that the £23 2s. tendered was more than the defendants were entitled to, Lord Chief Justice TINDALL, before whom the case was tried, ordered a verdict for the defendants.

On a motion for a rule *nisi*, that the verdict be set aside, it was insisted, in behalf of the plaintiffs, that the refusal to restore the boiler on the demand made, amounted to a conversion, which could not be purged by any subsequent act of the parties; and that the letter written by the plaintiffs' attorney was not a waiver of the right of action vested by the conversion.

But the rule was refused, and the Lord Chief Justice, in his opinion in the case, says, " A demand and refusal are evidence only, not conclusive, of the fact of conversion. The question here is, whether the plaintiffs ought to have brought their action after the letter of the defendant's attorney;" and after recapitulating the contents of the letter, his lordship further says, " After that, it seems to me to be impossible to say that there has been any conversion. The jury could not have found any other verdict." Mr. Justice ALDERSON, in delivering his opinion, said, " A demand and refusal are only evidence of a conversion. The refusal in this case was cured by the offer subsequently made, but before the issuing of the writ, to restore the boiler."

The decision in the above case was not put on the ground that the letter from the plaintiffs' attorney was a waiver of the prior demand and refusal, and an offer then to accept the property, but on the ground that the offer to deliver the property contained in the defendants' letter avoided the effect of the prior refusal to do so.

The above case would sustain the charge in the case under consideration, were it an action of *trover*, or for the wrongful conversion of property. But this is an action to recover the

possession of property.    It has been held in several cases since the Code, that such an action can now be brought in the cases where replevin would lie, under the Revised Statutes.

It has been said that replevin in the *cepit* was a concurrent remedy with the trespass, and replevin in the *detinet* with trover. But this was never so under all circumstances.    In the case of *Hanmer* agt. *Wilsey*, above cited, if, on the horse being returned by the defendant to the plaintiff's stable, the plaintiff had accepted it, no one will contend that an action of replevin could have been sustained—as the plaintiff could not have sued to recover possession of property of which he already had possession, and yet it was held that in such case trespass would lie.

The action to recover the possession of personal property is based upon a wrongful detention of it; and such wrongful detention must exist at the time of the commencement of the action.

This was substantially held in the cases of *Roberts* agt. *Randel*, (5 *Howard's Prac. Rep.* 327,) *Brockway* agt. *Burnap*, (12 *Barb. S. C. Rep.* 347,) and *Elwood* agt. *Smith*, (9 *Howard's Prac. Rep.* 528.)    The case of *Brockway* agt. *Burnap* was afterwards reversed on appeal to the general term, and I think rightfully so. (16 *Barb.* 309.)    The action was for the recovery of the possession of a promissory note and other property belonging to the plaintiff.

On the trial it appeared that, before the commencement of the action, the defendant had transferred the property to a third person, in payment of a debt owing by him, and the plaintiff was non-suited, on the ground that the action could not be maintained, unless, at the time of the commencement thereof, the defendant had possession of the property; and the special term denied a motion for a new trial.'    But, on the appeal to the general term, it was held, that the fact that, prior to the commencement of the action, the defendant had wrongfully parted with the possession, constituted no defence.    Mr. Justice HAND, at the conclusion of his opinion in the case, says, " But I prefer to put it upon the broad foundation that, as a

Savage and others agt. Perkins.

general rule, the action will lie for any unlawful taking or de-
tainer, although the defendant, before suit, has wrongfully
parted with the possession." In this I fully concur. A per-
son who has wrongfully delivered the property of another to a
third person, may be said yet to wrongfully detain it. By per-
mitting him to set up as a defence the fact that he had thus part-
ed with the possession, would be allowing him to take advantage
of his own wrong. But when one is ready and willing, and
has offered to deliver property to the owner, it cannot be said
that he wrongfully detains it. The object of the actions of
trespass and trover, prior to the Code, was, and of the corres-
ponding actions since the Code is, the recovery of pecuniary
damages, and not of property in specie.

The object of this action is the recovery of the property in
specie; and if, before suit brought, the defendant uncondition-
ally offers to restore the property, the object is already attained,
and the suit is wholly unnecessary. Such offer is equivalent
to a tender before suit brought. It is true, that in such actions
damages are recovered for the wrongful detention—but such
damages are merely incidents to the action. To entitle the
plaintiff to the possession of the property *pendente lite*, he is
required to make an affidavit, setting forth, in the present tense,
" that the property is *wrongfully* detained by the defendant."
(*Code*, § 207.)

As suggested above, the property in this case was no longer
*wrongfully* detained, after an unconditional offer to deliver it
to the plaintiffs. Had they taken the property when it was
offered, they yet could have recovered the damages sustained,
if any, by reason of the refusal to deliver it when demanded,
by an action corresponding with the former action of trover;
or, as it is denominated by the Code, (§ 167,) an action for
injury to property. (*See Hanmer* agt. *Wilsey, above cited, and
Murray* agt. *Burling,* 10 *Johns.* 172.)

Admitting that in such an action the plaintiffs could, under
the circumstances of this case, have recovered the value of the
property, that is no answer to the position here taken; as the
bringing of such an action would have determined their elec-

tion to recover the value rather than the property itself—and an offer of the property would have been no answer to the action. By bringing this action, the plaintiffs have shown their election to take the property itself, and not its value; and as before suit brought the property was tendered, there was no cause for bringing it.

I think the motion for a new trial should be denied.