Baker *v.* Hoag.

<hr>

SAME TERM. *Before the same Justices.*

BAKER *vs.* HOAG.

The statute relating to *wrecks* has no application to the case of property found sunk in the channel of a navigable river.

The provisions of the statute relate exclusively to such property as at common law, is known as wrecks, and to the charges upon such property known as salvage, and the expenses incurred by virtue of the statute. What was *wrecked property*, at common law, is wrecked property under the statute.

Finding property, sunk in the channel of a river, and saving and restoring it to the owner, is to be regarded as the ordinary case of finding the lost property of another and incurring labor and expense in replacing it in his possession. The finder has no lien for salvage, either at common law or by statute.

Yet the finder may, by the *agreement* of the owner, become entitled to a lien upon the property, for his labor and expenses in rescuing it.

Thus, if the owner of property lost has offered to any person who should find and restore it, a reasonable compensation for his trouble and expense, and a person, relying upon such promise, undertakes to secure the property, and does in fact rescue it, and is ready to deliver it to the owner, upon being paid for his labor and expenses, he is entitled to receive his compensation before he parts with the possession of the property.

The party performing such services upon property, at the request of the owner, becomes a bailee for hire, and as such has a lien upon the thing itself, for the amount of his compensation.

THIS was an action of replevin, tried at the Greene circuit, in April, 1849, before Justice Wright. It appeared upon the trial, that on the 16th of November, 1846, the canal boat William Henry, having on board 18 bales of wool belonging to the defendant, while being towed down the Hudson river, was sunk

in the channel of the river near four mile point, in the county of Greene, in consequence of a collision with a steamboat. Shortly after this occurrence the defendant came to the place and employed men to fish for the boat, but without success. On the 16th of January following the boat was discovered and the plaintiff, with several men in his employ, undertook to secure the boat and cargo. After several days they succeeded in dragging the boat to the shore and getting her up, and commenced unlading her cargo. They finished getting out the wool on Saturday preceding the first of February, about noon. Other portions of the cargo still remained in the boat. On Monday morning, the first day of February, about sun-rise, the defendant came and took the wool and removed it to Hudson, and on the same day it was re-taken upon the writ of replevin issued in this suit. When the defendant came to take the wool, the plaintiff forbade him, on the ground that he had a charge upon it, for getting it out of the river. The defendant said he did not care for that; he would take the wool.

*George Hotaling* testified that when the defendant was there, in the fall, he had requested him and others to look for the boat, and said he would see that they were paid. *Andrew Hotaling* testified that when the defendant was there, after the boat had been sunk, he wished the persons about there to search for the boat, and had requested him, the witness, to write to him when the boat should be found; that the boat was discovered on Saturday, and the next day he informed the plaintiff that he was going to write to the defendant, and he did write to him accordingly. In reply to his letter the defendant wrote from New-York under date of the 20th of January, as follows: "Your favor of the 17th inst. is at hand, and I feel much obliged by your kind offer to take charge of my wool, as sickness prevents me from coming up at present. I would like the wool taken to Hudson. Write me what day it will be there, and I will come or send some one to meet it and you there *and pay the expense*." Upon the receipt of this letter the plaintiff offered to deliver the wool to Hotaling on behalf of the defendant, but Hotaling having learned that one Huxford claimed

Baker *v.* Hoag.

to act as the defendant's agent, declined taking it.   The plaintiff said he had refused to deliver the wool to Huxford because he was not a responsible man, and that he knew Hotaling to be responsible.

Upon this evidence the plaintiff claimed to have a lien on the wool, either at common law, or under the statute relating to wrecks—also, that he had a right to have the evidence submitted to the jury upon the question whether the ~~plaintiff~~ had not offered or agreed to pay a reward or compensation to the plaintiff for his services in finding the boat and rescuing the wool ; but the court decided otherwise, and directed the plaintiff to be nonsuited.   To all which decisions the plaintiff's counsel excepted.   A motion was made for a new trial, upon a bill of exceptions.

*H. Hogeboom,* for the plaintiff.

*K. Miller,* for the defendant.

HARRIS, J.   When this cause was before us, on a former occasion, it was held that the plaintiff, at the time of the commencement of the suit, had no lien upon the wool, either at common law, or by statute. (3 *Barb. S. C. Rep.* 203.)   In that decision I concurred.   I still think the conclusions at which my learned associate arrived, in his examination of the case, were correct.   I can not, however, concur in all the views expressed in the opinion, as the ground of the decision.

A wreck is defined by elementary writers to be such goods as, after a shipwreck, are cast upon land by the sea, and left there within some county, so as not to belong to the jurisdiction of the admiralty, but to the common law.   (*Bouvier's Law Dic. Wreck.* 1 *Bl. Com.* 290.)   The first section of our statute relating to wrecks, contains substantially the same definition.   (1 *R. S.* 690.)   It is declared that "no ship, vessel, or boat, nor any goods, wares and merchandise, that shall be cast by the sea upon the land, shall be deemed to belong to the people of this state, *as wrecked property,* but may be recovered by

---

Baker *v.* Hoag.

---

the owner, &c. upon the payment of a reasonable salvage and necessary expenses." *Wrecked property*, therefore, is such property as is " cast by the sea upon the land." *Salvage* is defined to be the compensation to which any person may be entitled for services rendered to a ship in distress, by saving it, or its cargo, from impending perils, or recovering the same, after actual abandonment or loss. (*Bouvier's Law Dic. Salvor. Story on Bailm.* § 622.) It will be seen, therefore, that the term " reasonable salvage," found in the first section of the statute, is only applicable to the kind ot property described in that section as property " cast by the sea upon the land."

The second section of the statute declares it to be the duty of certain officers, when " wrecked property" shall be found, and no owner, &c. shall appear, to take the necessary measures for saving and securing the property. And all the subsequent provisions of the statute relate to the disposition of the " *wrecked property*," the adjustment of salvage, and other matters having reference to the disposition of the property and its proceeds. If the sheriff, coroner, or wreck-master has taken possession of the " wrecked property" before the owner appears, it is to be detained, though he subsequently appear, until all reasonable claims for salvage and necessary expenses are paid. In any case, whether the owner appears to claim the property before the officer has taken possession, or afterwards, if the parties— those claiming the property and those claiming to be paid salvage and expenses out of the property—do not agree upon the amount to be paid, the mode of determining such amount is prescribed. The 25th section also imposes penalties upon those who, having in their possession wrecked property, shall, for 48 hours, omit to deliver it to one of the officers mentioned. All these provisions, obviously, and, I think, exclusively, relate to such property as, at common law, is known as wrecks, and the charges upon such property known as salvage, and the expenses incurred under the provisions of the statute. The legislature intended to regulate the proceedings in relation to that specific class of property, and nothing more. What was *wrecked property* at common law is *wrecked property* under the statute.

Baker *v.* Hoag.

If a person rendering any service in saving the property would have a lien for his salvage at common law, that lien is protected by the statute. If he would have no lien at common law, none is given by the statute. If, therefore, my learned brother was right, as I think he has clearly shown he was, in holding that at common law the plaintiff had no lien upon the wool for salvage, it follows that none was acquired under the statute. In other words, the statute relating to wrecks has no application whatever to the case. It is to be regarded as the ordinary case of one man finding the lost property of another, and incurring labor and expense in saving and restoring it. The fact that the property was found sunk in the river, can not entitle the finder to a lien for salvage, any more than though it had been found upon the bank of the river. Nor would the finder in either case be entitled to claim salvage any more than he would if the property had been found upon the land. The case is in no respect within those principles of public policy and commercial necessity which, in all civilized and maritime countries, have supported and enforced the law of salvage. It having been held at the first trial, as matter of law, that the plaintiff was entitled to a lien upon the wool for his services and expenses, it became necessary, for this reason, to send the cause back for a new trial. Upon the second trial, a further question was raised, which was not involved in the former decision. The plaintiff claimed that, although he might not be entitled to a lien upon the wool for his services and expenses, at common law or by statute, he was entitled to such lien by the agreement of the defendant, and therefore that he had a right to have the evidence submitted to the jury upon that question. In this I think he was right.

The right to create a lien by contract, where none existed by law, is unquestionable. *Conventio vincit legem* is a maxim as old as the law. The effect, too, of a contract is the same, whether it be expressed in definite terms, or is inferred from the circumstances of the transaction. The only difference is, in the mode of establishing the existence of the contract. In the one case, it is established by proof of an actual agreement. In

the other, by the proof of facts and circumstances from which the existence of an agreement is inferred. When established, the effect of each is identical. Here the plaintiff claims to have proved a state of facts from which a jury would have a right to find that there was an agreement on the part of the defendant that if the plaintiff would find and secure his wool, he should have a lien upon it for his labor and expenses. The defendant, shortly after the boat, with the wool, had been sunk, had himself, made efforts to regain his property. He had employed men to fish for the boat. When he left, he requested the persons about there to continue the search for the boat, and promised to see them paid. Perhaps he said enough to amount to a public offer of a reward to any person who should find the boat and secure his wool. The letter to Hotaling, after the wool was found, would furnish some evidence in support of this position. He requests him to inform him as to the amount of expense of getting up the boat, and speaks of his obligation to pay his proportion of such expense.

The case of *Wentworth* v. *Day*, (3 *Metcf.* 352,) is in point, upon this branch of the case. The plaintiff had lost his watch, and had caused an advertisement to be published in a newspaper, offering to any person who would return the watch to the office of the newspaper, a reward of twenty dollars. The defendant's child found the watch, and delivered it to the defendant, who took it to the printing office, and left it with the printer, to be delivered to the plaintiff, on his paying the reward. The plaintiff having refused to do this, the defendant resumed the possession of the watch, and afterwards, when the plaintiff demanded it of him, refused to give it up, unless the plaintiff would pay him the $20 for his son. The plaintiff brought trover for the watch. It was held, that the promise in the plaintiff's advertisement imposed on him the duty of paying the reward; that the acts of performance were to be mutual and simultaneous; the one was to give up the watch on receiving the reward, and the other to receive the watch on paying the reward; and that this being the legal effect of the plaintiff's contract, the defendant being ready to deliver the watch, was not bound to

Baker *v.* Hoag.

surrender the actual possession of it, until he received the re-
ward. In legal effect, therefore, the plaintiff's contract gave
the defendant a lien upon the watch for the reward.

So, in this case, if a jury should find from the evidence, that
the defendant intended to offer to any person who should find and
restore his property, a reasonable compensation for his trouble
and expenses, and that the plaintiff, relying upon such prom-
ise, undertook to secure the property, and did in fact, rescue it,
and was ready to deliver it to the defendant, upon being paid for
his labor and expenses, he was entitled to receive his compen-
sation before he parted with the possession of the property. I
am unable to distinguish the case from that of any other ser-
vices performed upon property upon request of the owner. The
party performing such services becomes a bailee for hire, and as
such has a lien upon the thing itself for the amount of his com-
pensation. (*Story on Bailm.* § 440.)

I think, therefore, that the case should have been left to the
jury, with instructions to find for the plaintiff, if they believed
from the evidence that the defendant had offered to reward any
person who should recover for him his property, and that in pur-
suance of such offer, the plaintiff had performed the service con-
templated by the defendant when he made the offer. On the
contrary, that they should find for the defendant, if they should
believe that the plaintiff, having found the boat, voluntarily
performed what he did, without any promise of reward by the
defendant. A new trial must be granted; costs to abide the
event.

WATSON, J. concurred.

WRIGHT, J. dissented.

New trial granted.