## BLIVEN & MEAD *vs.* THE HUDSON RIVER RAIL ROAD COMPANY.

If goods are taken from a bailee by the authority of the law, exercised through regular and valid proceedings, it will be a defense to an action by the bailor, against him.

The bailee must assure himself, and show the court, that the proceedings are regular and valid, but he is not bound to litigate for his bailor, or to show that the judgment or decision of the tribunal issuing the process, or seizing the goods, was correct in law or in fact.

This is the rule as to bailees in general, and it includes the case of common carriers.

Property was delivered to a rail road company, at Sing Sing, by B., claiming to be the owner, and placed in a car, for transportation to New York. Before it had been removed from Sing Sing, a complaint was made by C. to a magistrate, that the property had been stolen from the true owner, by B. The magistrate issued a search warrant, under which a constable took the property from the carrier, forcibly, and brought it before the magistrate; who ordered it to be delivered to C., the agent of the owner. *Held* that the subject matter being within the jurisdiction of the justice, and his proceedings regular in form, the rail road company was protected from liability, in an action by B.

APPEAL from a judgment entered upon the report of a referee. The action was brought against the defendants as common carriers, to recover the value of goods delivered to the company to be transported from Sing Sing to New York, and alleged to have been lost, through its negligence. The following facts were found by the referee: That on the 2d day of September, 1859, the plaintiffs delivered to the defendants, at their depot or station, in the village of Sing Sing,

in the county of Westchester, twenty-nine cases or boxes of merchandise, containing saw plates and saw handles, of the value of $4338.82, for the purpose of having said merchandise transported to the city of New York, under an agreement or contract in writing, a copy of which was set forth in the plaintiffs' complaint. The said boxes of merchandise, after being so received by the defendants, were placed in their freight cars for the purpose of being transported to New York. Before the regular hour for the departure of the train in which the cars containing said merchandise were to go to New York, a complaint was made on oath by one James L. Cheeseman, to Joakin Urmy, a justice of the peace, in and for the town of Ossining, alleging, in substance, that the said property belonged to the Eagle Saw Manufacturing Company, and had been stolen or embezzled by Charles Bliven. The said magistrate thereupon, and on the 2d day of September, 1859, issued a warrant to search for the said property, and delivered the same to James Rider, a constable of the town of Ossining, for service and execution; that under and by virtue of the same, the said Rider forcibly opened the cars in which said merchandise was locked, and seized the the same, and took the same into his possession and custody on the morning of the 3d of September, 1859; that said merchandise, by the directions of said Urmy, was taken by said constable to the shop or premises occupied by the Eagle Saw Manufacturing Company at the prison, in the town of Ossining, to which place the magistrate repaired, and said magistrate there delivered the merchandise to one James L. Cheeseman, who claimed at the time to be the secretary of the Eagle Saw Manufacturing Company.

The plaintiffs claimed a right to the property, under the following circumstances: The plaintiffs, by an article of agreement made on the 27th November, 1858, between them and the Eagle Saw Manufacturing Company, were to make advances to the company, and to sell their manufactured articles upon certain terms provided for in said agreement, and

were made sole agents for the sale of all the company's goods, and were to have the right to hold all goods of the company in their possession as security for any and all advances they might make to the company. On the 30th June, 1859, the company gave to the plaintiffs a chattel mortgage on " all the engines, shafts, tools, anvils and fixtures, stock manufactured and unmanufactured or in course of manufacture, and all other goods and chattels of the company now or hereafter to be at the works in Sing Sing prison," &c. as security for the payment to the plaintiffs, on demand, of all advances made or to be made by them to the company, which mortgage was filed in the office of the clerk of Ossining, on the 1st July, 1859. On the 2d day of September, 1859, E. S. Hawley, claiming to be secretary of the company, in connection with Bliven, went to the premises of the company at the prison, caused the articles of merchandise in question which had been manufactured by said company, and which were not in a state of completeness for the market, to be boxed up, and Hawley delivered the same to Bliven for the plaintiffs, who caused the same to be placed on the cars of the defendants at the Sing-Sing station as aforesaid, when and where they were taken from the defendants by the constable, under and by virtue of the search warrant, and carried back to the premises of the company at the prison as aforesaid. The referee found as matter of law from the foregoing facts, that the attempted removal of Hawley as secretary and Bliven as treasurer, and the attempted removal of Briggs as president, and the attempt at vacating the office of said Briggs and Halsted as trustees and the election of Francis as a trustee, were illegal acts, and that the doings of the board, when Cheeseman and Applegate and Francis assumed to act as trustees, were unauthorized and illegal, and that Hawley and Bliven and Briggs and Halsted were officers of the company as fully after said meeting of the 31st August, 1859, as before. And he further found, as matter of law, that as said merchandise was taken out of the possession of the defend-

ants by the act of the law, and was never returned to them for transportation, the defendants were excused from the fulfillment of their contract with the plaintiffs to carry the said merchandise to New York, and were not liable to the plaintiffs for the omission to carry the same. He therefore reported that the defendants were entitled to judgment against the plaintiffs, dismissing the complaint with costs. The plaintiffs appealed.

*R. W. Van Pelt,* for the appellants.

*T. M. North,* for the defendants.

*By the Court,* EMOTT, J. It is no doubt true, as a general rule, that a bailee of property cannot set up against his bailor, that a third person has a better title to the property, and compel the latter to litigate the question of ownership. But it is also true that if goods are taken from the bailee by the authority of the law, exercised through regular and valid proceedings, it will be a defense to an action by the bailor. The bailee must assure himself, and show the court, that the proceedings are regular and valid, but he is not bound to litigate for his bailor, or to show that the judgment or decision of the tribunal issuing the process, or seizing the goods, was correct in law or in fact. This is the rule as to bailees in general, and it includes the case of common carriers. (*Angell on Carriers,* § 3*8*7, *a.* 1 *Duer,* 85, *and cases cited. Redfield on Railways,* §§ 441, 149.)

The property which is the subject of the present controversy was delivered to the defendants by the plaintiff Bliven, at Sing Sing, and placed in a car for transportation. Before it had been removed from Sing Sing, a complaint was made to a magistrate by a third person, that the property had been stolen by Bliven. The magistrate issued a search warrant, and a constable, armed with this warrant, took the property from the defendants forcibly, brought it before the magis-

trate, and he ordered it delivered to one Cheeseman, the complainant, as the agent of a manufacturing company. This proceeding was within the jurisdiction of the justice; and his proceedings were regular in form, even if they were corrupt, or the result of a fraudulent combination with Cheeseman, as is alleged by the plaintiffs. The defendants are not alleged to have been privy to any such scheme, and as long as the regularity and sufficiency of the proceedings of the magistrate cannot be questioned, the defendants will be protected. · The possession of the defendants was terminated by the warrant, and as the justice, having jurisdiction of the subject matter of the complaint, delivered the property to Cheeseman, if he had no right to make such a delivery, the remedy of the plaintiffs was against the magistrate, or against Cheeseman, or to take the property out of the hands of the latter. The invalidity of the magistrate's order did not revest the possession of the goods in the defendants, or renew their liability. The law had, by a valid act of one of its officers, assumed the custody of the property, and put an end to the control and the liability of the defendants; and unless, or until, the magistrate remanded the property to them, they could not again become responsible for it. Nor did it affect the question that the plaintiff Bliven went before the magistrate, and all proceedings against him, which may have involved the proceedings to search for and take the property, were terminated by his discharge. That might have given him a right to take the property, or to sue Cheeseman for it. But it did not redeliver it to the defendants, or renew their obligation to transport it to New York. If that were so, the same consequence might follow if Bliven had been arrested, examined, committed, tried, convicted, and then his conviction reversed. Would it be said, if upon his commitment or his conviction the alleged stolen property had been taken from the custody of a carrier, where he had placed it, and delivered to the complainant, that after the conviction

had been reversed he could forthwith sue the carrier for a non-delivery of the goods.

This point disposes of the case. The judgment should be affirmed.

[ORANGE GENERAL TERM, September 9, 1861. *Lott, Emott, Brown* and *Scrugham,* Justices.]