## BALL vs. LINEY.

Where an agent deposits the property of his principal with another, without any limitation or qualification whatever, and without asserting any title to it or lien upon it, himself, the deposit enures to the benefit of the principal, and is in judgment of law made on his account.

G. as the agent of B. deposited with L. goods of his principal, for safe keeping, leaving with the depositary a memorandum of the articles, and written instructions to this effect: "The said goods not to be given up without the consent of the said G." *Held* that assuming that the instructions were designed simply to protect G. in his individual capacity, as between G. and B. the former showing no lien or other authority to detain the goods against his principal, the depositary would have a right, and would be bound, to deliver them to B., the owner, on demand.

*Held, also,* that assuming the contract between the agent and the depositary to be in form valid for the non-delivery of the goods without the agent's consent, and the delivery to the owner, by the depositary, without such consent, to be a technical breach thereof, yet that the damages which the agent could recover against the depositary, for such delivery, would be merely nominal.

And B. having subsequently given to L. written notice that the goods were *his,* and that *he* had sent them to L.'s warehouse, for storage, and that he must not allow them to be removed without his (B.'s) order, to which L. *assented,* and agreed to act upon such direction; *Held* that the proper construction to be put upon L.'s language and conduct was that he agreed to hold the goods as B.'s property, and subject to his order.

And that L. having refused to deliver the property to B., on demand, such refusal was in effect, at the election of B., a conversion of the property, but did not of itself, and by its own force, divest the title of B. therein.

That until some decisive act of disaffirmance of the title by B. the ownership would be deemed to remain in him, and the property would be subject to execution against him.

*Held,* however, that the depositary was not bound to resist forcibly a levy upon, and a seizure of, the property by the sheriff, upon executions issued against G.    And that he was not guilty of any negligence or want of care, or other breach of the obligation imposed upon him by the law of bailment, in omitting to do so.

And that the property having been taken out of his hands by the sheriff, upon such an execution, he was virtually dispossessed of the same without his fault, and unable to restore the same to B.; especially as the sheriff had in his hands, at the same time, an execution against B. and advertised the property for sale on *that* execution, as well as the others.

*Held, also,* that a levy upon the property, under an execution in favor of *a third person,* against B. the owner of the property, and the consequent dispossession of L. the depositary, was equivalent to a return of the property

to B. And that it discharged the obligation of L. to make return, because, by the act of the law he was disenabled to do so.

And the return of the goods having become impossible, by the act of the law; *Held* that that fact should operate in mitigation of damages, in an action of trover, brought by B., if not wholly in bar of the action.

THIS is an appeal by the defendant from a judgment rendered in this cause in favor of the plaintiff for $4840.83, damages and costs. The action was commenced by the service of a summons on the 14th of August, 1862. The complaint was served October 18, 1862, and the answer December 13, 1862. The complaint. averred, in substance, that about April 1, 1862, the defendant received in store the plaintiff's goods, worth about $2500, to keep until demanded ; that the defendant collusively permitted third parties to take away some portion thereof; that the plaintiff demanded the goods, about August 5, 1862, of the defendant, offering to pay the charges thereon ; but the defendant unjustly refused to deliver the same ; wherefore the plaintiff demanded judgment for $5000, and interest from August 5, 1862.

The answer contains 1st, a general denial ; 2d, denies the fraudulent and collusive removal by third persons, and alleges the goods were taken without defendant's knowledge or assent ; 3d, alleges that the residue were, about 1st August, 1862, seized and taken by the sheriff of Rensselaer county on three executions (particularly described in the referee's report,) in favor of third persons, two of which were against George G. Gregory, and the third against the plaintiff in this action, and were by said sheriff sold under said executions, on the 16th of October, 1862.

The action was duly referred to Alvah C. Vail, as sole referee, and was tried before him. He reported in favor of the plaintiff for the entire value of the goods with interest, and the defendant duly excepted thereto, and separately to such portions of the report, and such decisions of the referee, as were adverse to him. The other material facts in the case are contained in the report of the referee, by which he found

Ball *v.* Liney.

the following facts and conclusions of law : That on the 31st day of March, 1862, and at the other times mentioned in the complaint, the plaintiff was the sole owner of the goods and property mentioned in the complaint. That the defendant at the time aforesaid, in connection with his other business, kept a warehouse at the city of Troy, N. Y. That at the date aforesaid, the plaintiff sent the said goods and merchandise in charge of one George G. Gregory, to the said warehouse of the defendant, for storage. That the defendant duly received said goods and merchandise, and put the same into his said warehouse for storage. That the day following such storage of the goods and merchandise in said warehouse, and while they were in the keeping of the defendant, Gregory, with the knowledge of the defendant, marked the boxes and packages containing said goods and merchandise with the letters, G. G. G., agent. That said marks and letters were put upon said boxes and packages by said Gregory without the knowledge, authority or consent of the plaintiff. That no contract was made in reference to the storage of said property when the defendant so received the same. That within a day or two after the delivery of said property to the defendant, the plaintiff called upon him and personally informed him that said goods and merchandise belonged to him, the plaintiff, and were sent by him to his, the defendant's warehouse for storage, and that the defendant must not allow said property to be removed without the order of the plaintiff; to which the defendant assented. That on the day following the storage of said property with the defendant as above found, the said Gregory, without the knowledge or authority of the plaintiff, left with the said defendant a paper, of which the following is a copy :

"A list of articles stored by Geo. G. Gregory, agent, with A. Liney, River street, Troy, N. Y. The said goods not to be given up without the consent of said Geo. G. Gregory : [Here follows a list of dry goods and merchandise.]

Troy, April 1st, 1862." .

---

That on the 28th day of April, 1862, the plaintiff gave to the defendant a notice in writing, of which the following is a copy :

"MR. A. LINEY—*Dear Sir:* Mr. Gregory has furnished me with an invoice made by him of the goods in storage in your loft, and you will please hold the same, subject only to my written order. The property is mine.

Troy, April 28, 1862. Yours, M. BALL."

That the defendant duly received said notice, and shortly thereafter told the plaintiff he would act upon it. That on the 15th day of May, 1862, the plaintiff went to the warehouse of the defendant, and personally demanded his said goods, at the same time offering to pay all of the defendant's charges, and the defendant refused to deliver them to the plaintiff, alleging for a reason that he had been forbidden to do so by Gregory ; that he was apprehensive of trouble about it, and wanted a delay until he could see Gregory. That the plaintiff thereupon offered the defendant a bond of indemnity upon the removal of said property, to be satisfactory to said defendant, and that the defendant refused to allow the plaintiff to have said property and goods. That on the 30th, day of July, 1862, the plaintiff made personally a similar demand and with similar offers, and the defendant again refused to deliver said property to the plaintiff. That on the morning of the 5th of August, 1862, the plaintiff went again in person to the defendant, and again demanded of him the delivery to him, of his said goods, and offered to pay all charges thereon, and to indemnify the defendant upon the removal, and the defendant refused to deliver said property at that time, but requested the plaintiff to call again in the afternoon. That in compliance with said request, the plaintiff went again in the afternoon of that day to the warehouse of the defendant, and again demanded his said goods, offering to pay all the defendant's charges, and to indemnify him for their removal. That in the interval between the first

Ball *v.* Liney.

and second visit of the plaintiff to the defendant on said day, the defendant consulted with George G. Gregory, at the office of A. A. Lee, Esq. his attorney. That Gregory then forbade the delivery of said goods to the plaintiff, and the defendant, under the advice of his attorney, again refused to let the plaintiff have his said goods. That on the 6th day of August, 1862, the sheriff of Rensselaer county levied upon the goods, having in his hands two executions issued out of this court against George G. Gregory, one in favor of Henry B. Harvey for $5,386.46, upon a judgment recovered January 26, 1861. The other issued by A. A. Lee, Esq. in favor of one John R. Jaffray and others, for $1,234.01, upon a judgment recovered June 2, 1862. That at the time of the levy upon said goods, by the sheriff, the defendant pointed out said goods, but in no way objected to the seizure of them by the sheriff. That the said Harvey execution was issued to the sheriff August 2, 1862, and the execution in favor of Jaffray and others August 4, 1862. That there had been previously an execution issued to the sheriff upon the Jaffray judgment and returned wholly unsatisfied. That no levy was ever made upon said property, nor any authority asserted by the said sheriff in any way, before said 6th day of August, 1862. That on the 7th day of August, 1862, an execution was issued out of this court to the said sheriff against this plaintiff, on a judgment recovered April 3, 1861, for $5645.07, in favor of one Moses T. Clough. That no formal levy was ever made upon the property in controversy, under this last mentioned execution. That on the 23d day of August, 1862, the sheriff advertised to sell the interest in said goods of Gregory and this plaintiff, by one advertisement of sale, by virtue of several executions, the sale to take place on the 30th day of August, 1862. That said proposed sale was adjourned from time to time until October 16, 1862, by posting up notices of adjournment attached to said first advertisement. That on said 16th day of October, 1862, the sheriff opened a sale of said goods by stating publicly that

he would sell the same under the execution in Harvey v. Gregory, and thereupon immediately proceeded to sell and did sell goods on that execution alone, and said goods were bid off by Harvey for $1200, Moses T. Clough being his attorney, and the proceeds of said sale were applied upon said execution in Harvey v. Gregory; and that said goods were subsequently taken possession of by Harvey, and kept and converted by him to his own use. That the sheriff was indemnified by separate bonds in both judgments for the levy and sale of said goods, and was also indemnified in both cases, upon the application of the money bid upon said sale. That after such sale and such application of the proceeds, and after November 1, 1862, the sheriff returned the execution in favor of Clough against this plaintiff wholly unsatisfied.

And the referee further found as a question of fact, that the defendant withheld said goods from the plaintiff when demanded as aforesaid, with the intent to benefit and for the purpose of thereby benefiting the said George G. Gregory, and in collusion with him. That said merchandise, on the 15th day of May, 1862, was of the value of $4000.

And he adjudged as a matter of law, that the plaintiff herein was entitled to recover from the defendant in this action the said sum of $4000, with interest from May 15, 1862, amounting, at the date of the report, to the sum of $4513.33, besides costs to be adjudged.

*M. I. Townsend,* for the plaintiff, (respondent.)

*John B. Gale,* for the defendant, (appellant.)

HOGEBOOM, J. Notwithstanding the terms of the bailment, and independent of the questions arising under the executions and levies, I think the defendant was bound to surrender the property to the plaintiff upon his demand. It was the plaintiff's property and not Gregory's. That is un-

Ball *v.* Liney.

disputed, upon the evidence in the case. The latter seems not to have had any lien or claim on it—or to have asserted title to it in any way whatever. He was confessedly the agent of the plaintiff, and when he originally deposited the property with the defendant, seems to have done so without any limitation or qualification whatever. Such a deposit, thus made, would enure to the benefit of the principal, and was, in judgment of law, on his account.

On the day succeeding the deposit Gregory returned to the place of deposit and marked the goods and packages "G. G. G. agent." This was confirmatory evidence of the title of the plaintiff. On the same day, and probably at the same time, but without the plaintiff's knowledge or authority, he left with the defendant a written memorandum of the articles and written instructions to this effect: "The said goods not to be given up without the consent of said Geo. G. Gregory." There is room for argument whether as he had confessedly made the deposit as agent, and so marked the goods, these directions must not also be construed to have been made in that capacity and for the benefit of his principal, and as really to mean "without the consent of the owner." But assuming that they were designed simply to protect the party giving these directions, in his individual capacity, I am nevertheless of the opinion that as between the principal and the agent, the latter showing no lien or other authority to deliver them against his principal, the depositary would have a right and would be bound to deliver them to the principal upon demand. They belonged to him, without doubt or qualification; the agent could not detain them against his principal under such circumstances; and it seems unjust that he should be able to vest his depositary with a larger power of detention than he himself possessed. It may be doubted whether, as against the real owner, the agent, in possession of the goods and apparently their owner, could make an effectual contract with the depositary, which could prevent the latter from delivering them on demand to such real owner.

But assuming the contract between the agent and the depositary to be in form valid for their non-delivery without the agent's consent, and the delivery to the owner by the depositary without such consent to be a technical breach thereof, I think the damages which the agent could recover against the depositary, for such delivery, would be merely nominal.

When subsequently, as the referee finds, the plaintiff gave to the defendant formal and written notice that the property belonged to him, and to hold the same subject only to his written order, and the defendant receiving such notice informed the plaintiff *he would act upon it;* and, as the referee also finds, the plaintiff not only apprised the defendant that the goods were his, but that *he* had sent them to the defendant's warehouse for storage, and that he, the defendant, must not allow them to be removed without his, the plaintiff's, order, *to which the defendant assented,* I think we can put no other reasonable construction upon such language and conduct than that the defendant agreed to hold them as the plaintiff's property and subject to his order ; and if he has embarrassed himself by distinct contracts between himself and the agent on the one hand, and himself and the principal on the other, which are conflicting and inconsistent, it his own misfortune, and he must submit to be the victim of his own indiscretion.

The plaintiff had therefore a right on the 15th of May, on the 30th of July, and on the 5th of August, 1862, to demand this property of the defendant as he did, and the defendant was bound to comply therewith and deliver it up. He refused for insufficient reasons to do so, and thereby, doubtless, exposed himself to the consequences of a legal prosecution. It was in effect, at the election of the plaintiff, a conversion of the property, but did not of itself and by its own force divest the title of the plaintiff therein. Clearly the plaintiff could, after such demand and refusal, have brought an action of replevin to recover the property itself, and thus in the most decisive manner have manifested his intention to insist on the ownership thereof. He could also,

Ball *v.* Liney.

as perhaps he has done in effect, have brought an action of trover for the conversion of the property, and thus declared his election to rely upon the recovery of damages instead of the recovery of the property itself. Or he could, as he did for a time, have lain still and brought no action whatever; and in such case I apprehend the right of property—the ownership—would be deemed to remain in him. It was, I think, at his election to treat the property as his own or the tort feasor's, and the legal presumption would not be that he had parted with the title, until he had manifested a clear and decisive intention to do so; until some decisive act of disaffirmance of the title I think the property would be subject to execution against him. Whether an action for damages for the conversion of the property would amount to such a disaffirmance, it is not necessary now to determine; for no such action was brought until after the levies had been made on the property by the sheriff of Rensselaer. On the contrary not only did the plaintiff claim the goods as his own, at the time of the first demand, but also at the time of the subsequent demands, and up to the time when the sheriff sold the goods under execution, which was after the commencement of this action.

On the 6th of August the sheriff levied on these goods under executions against Gregory, and virtually took them into his possession. Was the defendant bound to resist such levy and seizure, or had he a right forcibly to do so, as against an execution against a party (Gregory) who had been in actual possession and who had deposited them with the defendant? Was there any negligence or want of care in his not doing so, or other breach of the obligation imposed on him by the law of bailment? I think not. If not, then from and after the 6th of August he was virtually dispossessed of the property without his fault, and unable to restore the same to the plaintiff. On the 7th of August the execution against the plaintiff in this action came into the sheriff's hands, and although there was no formal levy under

that execution, the former levies of the previous day enured to the benefit of this execution, and gave the plaintiff therein the benefit of it.   Especially is this so when. on the 23d of August the sheriff advertised the property for sale under *this* execution as well as the other—thus conclusively establishing the fact of a levy, and presumptively, I think, in the absence of evidence to the contrary, a levy on the 7th of August, on the execution against Ball.   All this made it impossible for the defendant to retain the property after the last mentioned date.   It is true the sheriff is supposed not to have actually sold the property on the execution against Ball, but he actually sold it under. some execution, and it was put beyond the power of the defendant to regain possession. Nor does it seem to operate with any hardship upon the plaintiff; for if he was—as he seems to have been—the real owner of the property and entitled to the possession thereof, he has an abundant right of action against the sheriff or his indemnitors for their illegal conversion of his property.   On the other hand, if this action is maintainable, the plaintiff seems likely to recover damages to the extent of the value of the property, both against this defendant and the parties to the execution sale.

But it is said this is an inevitable consequence flowing from the illegal act of the defendant in refusing to deliver the property to the plaintiff on demand, and was tantamount to a conversion of the property ; and that the right of action thus vested in the plaintiff has never been discharged or surrendered by him, and could not be, without his consent.

But I regard this as an erroneous view both of the law and the fact.   The plaintiff had doubtless a right of action for the tortious refusal of the defendant to deliver.   And if he had availed himself of it, and done no act inconsistent with the enforcement of that right, and if also the law had not stepped in and prevented its enforcement, the right would have continued unimpaired up to the commencement and the trial of this action.   It may be doubted, however, whether

the supposed conversion arising from a tortious refusal to comply with a lawful demand of property is not waived by a subsequent demand of the property as belonging to the party making the demand, and by repeated assertions of title to the property long after the conversion has taken place. The act of conversion implies an appropriation of the property to his own use by the party guilty of the conversion; and assuredly a party can not both retain title to the property converted and have damages to the amount of its value for its appropriation by another party. True the title to the property is not absolutely and completely changed until judgment and execution satisfied against the offending party; but this is because the action may abate or be discontinued, or circumstances may occur to prevent complete satisfaction.

If the plaintiff had brought an action of replevin, instead of an action of trover, and notwithstanding the defendant's original and repeated refusals to deliver the same upon demand, he tendered or offered to return the property before suit brought, I think the action of replevin could not have been maintained, because the defendant had done before suit precisely what it was the object of the suit to compel him to do; and because, notwithstanding the apparent conversion of the property by the defendant, the plaintiff had not as yet elected to disaffirm his title, and presumptively it remained in him. True the defendant was liable to damages if any there were, for the wrongful detention; but those were merely incidental to the action of replevin, and could not alone have sustained the action of replevin itself. There would have been no obligation to their recovery in a distinct action properly framed for that purpose. (*Savage* v. *Perkins*, 11 *Howard*, 17.) I think the levy upon the property by an execution in favor of a third person against the plaintiff in the action, and the consequent dispossession of the defendant, was equivalent to a return of the property to the plaintiff. It discharged the obligation of the defendant to make return, because by the act of the law he was disenabled

to do so. There is no breach of obligation under the law of bailment, of which he was guilty. If he had made actual return to the plaintiff, the property in the latter's possession would have been subject to this execution, and it can not differ the case in substance that the execution was levied just before its return to the plaintiff instead of just after such return might have been made.

Is the case altered in substance when the action is trover, instead of replevin? Admit that the refusal to deliver constituted a conversion, which is not always and necessarily the case, being merely evidence from which a jury may infer a conversion, (*see* 11 *How.* 17; *Hill* v. *Covell,* 1 *Comst.* 522; *Hayward* v. *Seaward,* 1 *Moore & Scott,* 459,) and it is to be remarked in this case that the referee has not found, in terms, any actual conversion. Nevertheless, as has been already stated, the actual title to the goods remained in the plaintiff, and they were subject to execution against him, until the title was completely changed by satisfaction of the judgment to be obtained for the damages recoverable in the action of trover. Before such satisfaction, and before the commencement of this suit, the sheriff steps in with an execution in favor of a third person, not the defendant, and dispossesses the defendant and takes possession of the goods and puts them in the custody of the law. No act of the defendant contributed to this result, and no act of his could prevent it. The return of the property has become impossible by the act of the law. The fact, in my judgment, should clearly operate in mitigation of damages if not wholly in bar of the action, and such, I think, is the effect of the authorities.

It is said the case of *Hanmer* v. *Wilsey,* (17 *Wend.* 91,) is conclusive against this view of the case. But there are two marked points of difference between that case and the present. 1. The levy of the attachment, which the defendant offered to interpose by way of defense, was, *after* the commencement of the action. 2. It was an attachment in favor of the defendant himself.

Ball *v.* Liney.

In *Otis* v. *Jones*, (21 *Wend.* 394,) a distinction was taken between an execution in favor of the wrongdoer himself and one in favor of a *third person,* and the effect of the latter left undecided.

But in *Higgins* v. *Whitney,* (24 *Wend.* 379,) the question came up in the *latter aspect,* and the process under which the defendant defended was in favor (as in this case) of a third person, and it was distinctly held that "one who has wrongfully taken property can not mitigate damages by showing that *he has himself* applied the property to the owner's use without his consent. But when the property has been so applied *by the act of a third person, and by operation of law,* that fact should be *taken into account* in estimating the plaintiff's damages." This decision was followed and approved in *Sherry* v. *Schuyler,* (2 *Hill,* 204,) in a case precisely similar in principle, and has been sustained in prior and subsequent cases. (*See Edson* v. *Weston,* 7 *Cowen,* 278; *Bliven* v. *Hudson River R. R. Co.,* 35 *Barb.* 188; *Whitaker* v. *Merrill,* 28 *id.* 526; *Savage* v. *Perkins,* 11 *How. Pr. R.* 17.)

It is suggested that as the referee has found that the defendant withheld the goods from the plaintiff when demanded, "with the intent to and for the purpose of thereby benefiting the said George G. Gregory, and in collusion with him," this feature is sufficient, within some of the cases before referred to, to overrule the defense. But I think otherwise. The principle of this qualification to the admissibility of the proposed defense is some act of bad faith on the part of the defendant in bringing the property within the operation of the process under which it was seized. The finding of the referee is too vague and inexplicit, on that subject, to admit of such an application. The *mode* in which the defendant proposed to benefit Gregory is not stated and can not be inferred. It would be a violent and strained inference to conclude that it was to be by having an execution issued against the plaintiff; and that this intent was formed as early

as the 15th of May, when the first refusal took place, the execution not being issued till August. If there be any thing in this branch of the case, it can be presented on the new trial.

As the referee gave judgment for the plaintiff for the entire value of the property with interest, and refused to give any effect to the levies, either in bar of the action or in mitigation of damages, I think the judgment should be *reversed*, and a new trial granted, with costs to abide the event.

MILLER, J. concurred.

INGALLS, J. expressed no opinion.

New trial granted.

[ALBANY GENERAL TERM, September 19, 1865.  *Hogeboom, Miller* and *Ingalls*, Justices.]