*568
By the Court:

Monell, J.
The rule in respect to the duties and liabilities of common carriers is, that their responsibilities cease with delivery. In the absence of any established usage or special contract to the contrary, the delivery must be to the bailor, or as the bailor may direct. If the consignee is known to the carrier, or with reasonable diligence can be ascertained, it is the duty of the latter to make actual delivery to such consignee either at-his residence or place of business. This rule is more especially applicable to carriers by land. But if the consignee is unknown to the carrier, or with reasonable exertions cannot be found, the carrier will be absolved from actual delivery, and his responsibility will then be confined to putting the property in a place of safety, when the warehouse-keeper will become the bailee of the owner, and the carrier’s liability will cease.
Usage will sometimes relieve the carrier from actual delivery at the residence of the consignee, as where it is the common custom to place goods in a warehouse or a railroad station. But such usage must be of so long continuance, uniformity, and notoriety as to justify the belief that it was known to the owner.
In all cases, however, whether the carriage be by land or water, and whatever may be the duty of the carrier to make delivery to the consignee, either in person or at his residence or place of business, it is well settled, that in no case will a carrier be excused from giving notice to the consignee of the.arrival of the goods at their destination, to enable him to take them into his possession (1 Pars. on Con., 668; Story on Bail., sec. 543; Ostrander v. Brown, 15 J. R., 39; Fisk v. Newton, 1 Denio, 45). Of course this must be qualified by the remark that the carrier must know, or have the means of knowing, the consignee.
In this case I am of the opinion that it was the duty of the defendant to have delivered the property to the consignee of the plaintiff, either at his residence or place of business, if he knew, or with reasonable exertions could have ascertained, who such consignee was.
*569 The receipt given by the defendant on receiving the goods for transportation, and which contained the contract of the carrier, had no unusual stipulations. It was an agreement to carry the goods from Baltimore to Hew York, deliverable to order. They were to be carried by the “ Hope Dispatch fast freight line,” through by rail. The defendant was the proprietor of the “ dispatch,” which seems to have been an express for the transportation of goods by rail, but was in no way connected with any railroad company, except as the hirer of one or' more of its cars.
The contract, therefore, was the ordinary engagement of a common carrier by land, and was subject to all the rules governing such carriers. Such rules required the defendant in this case to deliver the property to the consignee, if he was known or could be found.
The rule as stated by Judge Story (supra) is, that if there is no special contract or local custom to govern in cases of transportation by land, the carrier is bound to make a personal delivery to the consignee; and he refers to numerous cases in support of the rule.
In the case of Haslam v. The Adams Express Co. (6 Bosw., 235), a package transported by the company was left inside of the outer door of the first story of the building of which the consignee occupied the fourth story, and notice was given to a person (not authorized, however, to receive it) of the deposit of the package. That was held not to have been a delivery.
In this case the goods were deliverable “ to order.” There were no written marks or designations upon the packages, directing to or indicating the consignee in Hew Y ork. Ho duty, therefore, in respect to the delivery of the property rested upon the defendant until the consignee or other person authorized to receive the goods was made known to him. Upon being apprised of such consignee or person, it became the duty of the defendant to deliver to him. The facts, as disclosed on the trial, may have furnished an excuse for not making an actual, delivery to the plaintiff’s agent or consignee; and as it is not necessary to place the decision entirely upon that ground, I will pass to and examine another ground.
*570 Hr. Justice Story, in Ms treatise already cited, in speaking of the duty to make personal delivery, says: However that may be, it seems clear that carriers are bound to gime notice of the arrival of the goods to the person to whom they are directed, if they are known to them. So in Ostrander v. Brown (supra), where goods were unladen upon a wharf and lost, an action of trover was sustained, on the ground that no notice had been given to the consignees that the goods were unladen, or that they had a/rrimed. And in Fisk v. Newton (supra), in a case of transportation by water, it was held, that notice of the arrival and place of deposit of the goods to the consignee, if he was known, or could with reasonable efforts be found, was sufficient, and took the place of a personal delivery.
The question then recurs, Was the defendant excused from giving notice of the arrival of the goods, and if not, is he responsible for their subsequent loss ?
It seems the goods were received for transportation on the 21st of January, and arrived in Hew York on the 27th or 28th of the same month. Richter, one of the plaintiff’s witnesses, testified that he was the plaintiff’s agent and authorized to receive the goods; that, within three or four days after the goods were delivered to the defendant, in Baltimore, he went to the defendant’s office in Hew York, and there made known his agency and authority to receive the goods; inquired if they had arrived, and being informed that they had not, left his name and place of business, which were taken down and a promise made to notify Mm of their arrival. The goods, upon their arrival in Hew York, were put upon the dock, where they remained until the 2d of February, when they were placed in the warehouse, whence they were taken by the sheriff on the 19th of February.
If the evidence of the witness, Richter, was to be believed, the defendant was fully apprised of his existence as the agent or consignee of the plaintiff, and of his authority to receive the goods. It is true much of his evidence was contradicted, and there was some doubt whether he was not mistaken in the person with whom he had the interview in the defendant’s office; but I think there was sufficient evidence to have gone to the *571 jury, and that upon it the jury might and would have been authorized to have found, that before the arrival of the goods the defendant knew of the agent and of his authority to receive the goods.
Upon such finding, and that notice had not been given of the arrival of the goods, the defendant should have been held responsible for amy loss that happened to the plaintiff from any cause whatever.
In the view, however, of the learned justice at the trial, this evidence was deemed wholly immaterial. He was of the opinion that the subsequent taking of the property by the sheriff in the two actions by persons claiming to be the owners was a complete defense.
Without doing any violence to what is denominated the “ authority of law,” it may be sufficient to content ourselves with holding, that whatever protection such taking by the authority of law may afford carriers or bailees in general, who have been deprived of property by legal process either during its transit or before a delivery could be made, it is no protection where, before such taking, the carrier or bailee has incurred a liability by his neglect to deliver, or to give the notice which shall take the place of a delivery.
When these goods arrived in Hew York it was the defendant’s duty immediately to deliver them or to give notice of their arrival, and in default of doing either (assuming that he knew to whom to deliver or give notice) he at once became liable for any loss, the result of such neglect, which might afterward occur. And it would be opposed to the principles of equity to allow the subsequent taking, although under process of law, to excuse the prior neglect of duty and relieve the carrier from the previously attached liability.
In the several eases to which we were referred in support, as is supposed, of the conclusiveness of the taking by legal process, and to which I shall refer again, the property was taken from the carrier either before it had reached its destination or before it could be delivered, and consequently before the carrier had *572 incurred any liability for Ms neglect. It seems to me, therefore, that a distinction may very properly be made between those cases and one where the carrier had rendered himself liable to the owner before legal process was interposed to deprive him of the power to deliver. And it is enough to rest the case upon , that distinction, and to shut out what otherwise might give effect to the legal proceedings in this case.
But without any other or further proof than the mere production of the record of the proceedings in the actions against the defendant, the learned justice held such record to be conclusive, without any proof whatever of any title to the goods in the plaintiffs in those actions, and without any proof of notice to the plaintiff that he might come forward and defend or protect Ms title.
However unsettled the law may be, and it may be said to be quite unsettled, in regard, to the right of .a carrier to dispute the title of the person who delivers the goods to him, or to set up an adverse title to defeat the right of action upon Ms contract, it nevertheless cannot be denied that where the carrier is allowed to do so the onus is upon him to establish such paramount title.
. On the trial an offer was made by the defendant to prove that .the plaintiffs in the replevin suits were the owners of the goods, but the evidence was excluded by the court, on the ground that the judgments in those actions were a bar to a recovery here. It may not be out of place to see whether this proposition, under the facts of the case, can be sustained.
I do not think that.it can be claimed that the rule is well established that the mere taking of goods from a bailee or carrier by process of law is by itself a complete justification for not delivering. If such a rule was to be established, and the bare production of the legal process under which the property had been taken should be deemed conclusive, without any proof of title in the person asserting a paramount title, it would, in almost every case, place it out of the power of the bailor to .ever reclaim Ms property, and until some authoritative decision to that effect is rendered I am unwilling to adopt any such proposition.
*573 I think the true rule is, that a bailee or carrier who attempts to shield himself behind a “ process of law,” by which he has been deprived of the property, should be required to show that the person claiming the paramount title was the true owner. Mr. Justice Story (Story on Bail., § 582) says that a bailee may excuse himself by showing that the goods were demanded and taken from his possession by a person having a superior title to the property. That in general a carrier is not permitted to dispute the shipper’s title, or to set up an.adverse title to defeat the former’s right of action. But if he delivers them to a third party, he may show, in an action against him, that such third party was the actual and lawful owner, and, as Mr. Parsons says (1 Pars. on Con., 678), that the person who delivered the goods to the carrier had no right to them whatever, and the current and weight of authority, I think, fully supports the rule (King v. Richards, 6 Whart., 418; Bates v. Stanton, 1 Duer, 79; 1 Pars. on Con., § 679). Yet this rule, it would seem, is somewhat qualified, and requires notice to be given (where it can be) to the person who delivered the goods to the earner, of such adverse claim of title (Story on Bail., § 582).
The rule I have stated may be said to be confined to cases where property is taken without process of law or given up by the carrier without suit, and, in that case only, is he required to establish the superior title of the person claiming.
Perhaps two or three of the cases which were cited to us by the respondent’s counsel may seem to favor this latter view. In one of them (Edson v. Weston, 7 Cow., 278) the property had been taken from the defendant under an execution, and it was held to constitute a defense. The court said the property had been taken by paramount authority—the authority of law. But the defendant in that case was amere depository, and answerable for gross neglect only, besides the offer was to prove that before the property was delivered to the defendant it had been levied upon, although the constable did not take possession until after-wards. As the property was in the custody of the law immediately upon the levy, there was a paramount right in the constable as against the plaintiff, who was a mere bailee without hire.
*574 In another of the cases (Van Winkle v. The U. S. Mail S. S. Co., 37 Barb., 122) the defense was that the property belonged to Mygatt & Co., and was taken from the carrier under process against them. The defense was overruled. The court, in granting a new trial, say that if goods are taken from a bailee or carrier by authority of law, it is a defense against the claims of the bailee. But it will be seen that the offer of evidence, which was excluded in that case, was to prove that the property did not belong to this shipper, but to the firm of Mygatt db Go., and was taken, etc., and it was the exclusion of this evidence that was held to be erroneous.
Another of the cases (Blivin v. The Hudson R. R. R. Co., 35 Barb., 188) was claimed to be almost identical with the case at bar. The learned justice in that case says, that if goods are taken from the bailee by the authority of the law, it will be a defense to an action 1 by the bailor; that he is not bound to litigate for the bailor, u or to show that the judgment or decision of the tribunal issuing the process, or seizing the goods, was correct in law or vn fact? This last proposition is not supported by the learned justice, by any cited case or authority whatever, and in my judgment is not sound; And it appears, moreover, that the title to the property in that case was litigated, and such litigation tended to show that the shipper had no right whatever to the property, which is all that it is necessary to claim should have been shown in the case at bar.
So it will be seen that one only of these cases holds that mere process of law in favor of an adverse claimant is by itself, and unaccompanied by proof of such adverse title, a sufficient defense, and the others do not support the position that proof of adverse title is confined to cases of delivery by the bailee without suit. Bor have 1 been able to find any case, except that of Blivin v. Hudson R. R. R. Co. (supra), where such a distinction is taken, and the reason against any such distinction is too strong to be easily overthrown.
While the case of Bates v. Stanton (ubi supra) is an authority that the carrier may show title out of, or in other words may *575 dispute the title of the shipper, it does not sustain the position that where the property is taken by authority of law it is not necessary to prove the adverse or superior title of the claimant. In that case the judgment, which the court held to be conclusive against the shipper without further proof of title in the claimants, was a judgment in favor of such claimants agaimt the shipper, in which they had recovered in trover the value of the goods, and the court held the judgment conclusive, on the doctrine of estoppel, the shipper being a party to it.
In the absence of any case except the one referred to, holding the conclusiveness of a judgment in a case like this, and there being no difference in principle as regards the requisite proof between cases of taking property with or without process of law, we should adopt, I think, what seems to be the most just and reasonable rule, and place the two cases upon a level.
But without committing ourselves to the proposition last discussed, the court is of opinion that a new trial ought to be granted, on the ground that the question arising under the evidence of the witness Richter was a proper one for the jury, and that it was erroneous to withhold such question from them.
Of course it follows, and such is the opinion we intend to express, that in submitting such question to the jury they should be instructed that, if they believe the defendant knew the plaintiff’s agent, and his authority to receive the goods, and neglected to give him notice of their arrival, the defendant was liable for their value, notwithstanding they had been taken in the replevin suits, and their verdict should then be for the plaintiff for such value.
Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.