By the Court.—Monell, J.
I think it quite free from doubt, that the direction of the learned justice in the action of Haws against the railroad company was correct. As between those parties, Haws was the owner of the money, and had the right to its custody ; and his claim or title could be made to yield only to the superior title of the real owner. But, until the real owner was found, the finder as against all others is to be regarded as the owner (McLaughlin v. Waite, 5 Wend. 405; Amory v. Delamire, 1 Strange, 505).
And such finding is sufficient to give a right of action by the finder against any person who wrongfully deprives him of the possession (Ibid.).
Nor was such right affected by the fact that the package was found in one of the plaintiffs’ cars. •
In McLaughlin v. Waite (supra), a distinction is made between articles secreted in the earth and such as are found upon the surface. The latter, the chancellor says, if no owner appears to claim them, it is presumed they have been intentionally abandoned by the former proprietor. They consequently belong to the finder.
, In Matthews 'o. Harsel, 1 E. D. Smith, 393, a pack *379 age of Texas notes were found by a servant in the house of her mistress. She handed the package to her mistress to keep for her, who intrusted them to the defendant to ascertain their value. The defendant sold them and appropriated the proceeds. The servant sued and recovered.
A doubt was expressed whether a servant, who finds a chattel in the house of his employer, acquired a title to it; but the doubt grew out of the relation between such persons, and was not suggested by the place where the chattel was found.
In Bridges v. Hawkesworth, 7 Eng. L. and Eq. 424, the plaintiff found upon the floor of the defendant’s shop a parcel containing bank notes. The defendant was told by the plaintiff that he had found the notes, and he “asked the defendant to keep them until the owner-appeared to claim them.” The defendant advertised the notes, but no one appeared to claim them. Upon a subsequent demand and refusal, the action was brought. The case turned upon the single point whether the circumstance of the notes having been found inside the defendant’s shop, gave him the right to have them as against the plaintiff who found them. It was held (Patterson, J.) that such circumstances did not take it out of the general rule of law, that the finder of a lost article is entitled to it as against all persons, except the real owner; and that the place in which it is found makes no legal difference.
The regulation, of which there was some proof, to the effect that articles found in the cars should be left in the company’s office, was merely for the government of its employes, and could not affect the rights of any finder who did not hold a relation of employe of the company.
The finding of. fact by the court was, that Haws delivered the money to the plaintiffs “ to be held by them for the owner, and that they accepted the same.” There is nothing in the finding one way or the other, that Haws' *380 did or did not intend to divest himself of any title that he might have to it.
There was nothing in the form or manner of the deposit from which it could be found or inferred that Haws did so intend; but, as in the case of Bridges v. Hawkesworth (supra), it could have been found, had it been necessary, that at the time Haws delivered the notes to the plaintiff, he did not intend to divest himself of his title to them. In that, as in this case, the notes were given to be kept until the owner appeared to claim them.
It stands then supported by authority, that, as between Haws and the railroad company, the former had the better right to the money, and on their refusal to return it, became liable to him.
The conclusion of the justice, that the plaintiffs held the money as trustees for the owner, is not, therefore, except perhaps as between the company and Malady, in harmony with the rules of law I have stated. They did not hold it as trustees, nor could they assert any such relation to it as respects their relation to Haws, the finder.
At the most, the company could claim, that they held the money as mere bailees for Haws, the finder and bailor ; and in that character, it is well settled that they could not dispute their bailor’s title (Vosburgh v. Huntington, 15 Abb. 254; 2 Story Eq. Jus. §§ 816, 817), and the only qualification of this rule is, where the bailee has been compelled by action, of which the bailor had notice, to pay for the property to one having the true title (Cook v. Holt, 48 N. Y. R. 275). Therefore, even had Malady appeared and claimed the money as the real owner, the railroad company could not have set up such claim as a defence to Haws’ action.
Nothing short of a recovery in an action by Malady would have been available, and it is doubtful if such recovery would be sufficient without also showing *381 aliunde that Malady was the true owner (Mierson v. Hope, 2 Sweeny, 561).
The finder of a lost chattel has no lien upon it for any expenses incurred in respect to it, either for rescuing or preserving it (Baker v. Hoag, 7 Barb. 113), except for salvage hy the common law or statute concerning wrecks. This principle was confirmed by the Court of Appeals in the same case (7 N. Y. R. 555).
It therefore follows, that Haws had no lien upon the money for any expenses incurred hy him in respect to it; and also, and a fortiori, that the railroad company had no such lien.
They were in all respects subordinated to the rights of Haws, and could look, if they could look at all, only to him, as their principal, for any expenses incurred.
In this view it is impossible to reconcile with the law that part of the judgment which awards to the plaintiffs, to he paid out of the fund, the costs and expenses they had incurred in defending themselves against the rightful suit of Haws, and their costs and expenses in prosecuting this action.
But, as that part of the judgment has not been appealed from hy the defendant Malady, who alone is affected hy it, it is not necessary to pursue the subject further.
This action is claimed to he in the nature of an inter-pleader. It is alleged that the plaintiffs have a sum of money delivered to them hy Haws, the finder, which the defendant Malady claims as owner ; and the plaintiffs ask that Malady’s right to it may judicially he determined hy the court, and that Haws he enjoined from further prosecuting his action.
There is no provision of law which authorizes such an action. The 122d section of the Code is the only statute which provides a remedy for settling adverse claims or interests. Under that section, the court may determine any controversy between the parties before it, or, when *382 a complete determination cannot be had without the presence of other parties, may order them to be brought in. So a person, not a party to the action, but having an interest in the subject of it, may apply to be made a party.
Bat that provision of the statute applies to pending actions, and does not in terms authorize an independent action to reach the same results.
Thus the railroad company, when Malady made claim to the money, could by supplemental answer, have had him brought into the pending action of Haws ; or Malady could have applied to have himself made a party to it.
This view of the section was taken in Beck v. Stephani (9 How. Pr. R. 193).
As this is an independent action; it remains to be seen whether it can be sustained upon principles applicable to actions of interpleader.
The object of that action is to protect a person standing in the situation of an innocent stakeholder (Badeau v. Rogers, 2 Paige, 209).
The plaintiff must disclaim any interest in the subject of the action (Atkinson v. Mauks, 1 Cow. 691). It must be averred that the plaintiff is uncertain as to whom the right belongs (Welf. Eq. Pl. 152), and he must also aver an offer to, and actually bring the money into court, before taking any steps in the cause (Meux v. Bell, 6 Sim. 75). And finally, the action of interpleader cannot be maintained, except in cases where the plaintiff can in no other way be protected from an unjust litigation, in which he has no interest (Badeau v. Rogers, supra), and in all cases the action must -be brought immediately after or before the commencement of proceedings at law, and not after verdict or judgment has been obtained (Cornish v. Farmer, 1 Young & Jer. 333).
From these elements which enter into the action of *383 interpleader, it will be seen that few of them exist in the present action.
(1) . The plaintiffs do not fully disclaim all interest in the money, but allege that they held it as trustee for the real owner, and for their reasonable expenses, and counsel fees, in the protection of the money for the true oioner.
(2) . It is not alleged that it is uncertain to whom the money belongs.
(3) . There was no offer to or actual bringing the money into court.
Again, the action was not brought until after verdict; and there are other remedies provided which the plaintiffs might have resorted to.
These are in my judgment sufficient to deprive the action of any claim to be one of interpleader, or even in the nature of an interpleader.
But another reason exists which is probably more conclusive. An action of this nature will not lie where as to either of the defendants the plaintiff is a wrong-doer (Shaw v. Coster, 8 Paige, 339). In that case the sheriff filed a bill to settle conflicting claims of several persons to property, which he had levied upon and sold under an execution. But the bill was dismissed on the ground that as to the claimants to the property, the sheriff was quasi a trespasser, and that they could not be compelled to come into a court of equity and litigate the question of right to such property with the creditor in the execution, instead of trying the question at law against the sheriff himself as the wrong-doer. This case is cited and approved in Rogers v. Weir, 34 N. Y. R. 469.
In Lund v. Seaman’s Saving Bank, 20 How. Pr. R. 461, a motion was made by the defendants to substitute an alleged claimant of the money in their place as defendants, which was denied. The court held this language: “The plaintiff might well claim that the bank having received the money from him, and having agreed *384 to repay the same to him, could not with legal propriety recognize the legal claims of others who were not in privity with him, or claiming through him, or under his title, but by a superior and hostile title.” See also same case, 23 How. Pr. R. 258.
We have already seen that towards Haws the railroad company was a wrong-doer.
The refusal to return the money to him, put the latter in default, amounting to a conversion, and estopped them from setting up title in any third person (Trigg v. Hitz, 17 Abbott, 436). They did not qualify their refusal, but claimed a right to it, superior to the claim of Haws, and the court in Rogers v. Weir (supra) say, such a refusal is evidence of a conversion.
And Mr. Justice Hoffman in this court (Wilson v. Duncan, 8 Abb. 354), says (quoting from the chancellor in Deesborough v. Harris, 31 Eng. L. and Eq. 592), that the ground of an interpleader is that there is a conflict between two or more persons claiming the same debt, and that the double claim has not,been occasioned by the conduct of the person who is liable to discharge the debt or obligation.
The plaintiffs by their misconduct have caused the double claim to be made. Had they delivered the money to Haws as they were legally bound to do, there would have been no necessity for any interpleading, and Haws would have had the right of having Malady’s claim to it tried and determined by a jury, and not without a jury, as was done in this case.
Upon mature consideration of the facts and circumstances of this case, from the time the money was found by Haws, I am satisfied that this action was and is without legal justification. The plaintiffs were clearly in the wrong when they refused to return the money to Haws, and equally in the wrong when they drove him to his suit, and then defended it.
They had no legal defence, and standing in the char *385 acter of the mere agents or "bailees of Haws, they could not dispute his title in that action, nor should they "be permitted to dispute it in any other.
The result is, that in our judgment Haws ought not to have been restrained in the prosecution of his suit for the recovery of the money ; or if he was, he should at least have been allowed and paid his reasonable expenses incurred in that litigation. The railroad company were permitted to retain a sum sufficient to indemnify themselves, for their expenses of an action which their own wrongful act had caused, when they had no lien upon the fund of any kind whatever. But no such provision was made for Haws. He, the finder, was not only not rewarded, but was refused all indemnity for his expenses in a litigation, forced upon him by the railroad company, and in which he was successful. Hot only* as owner, as between himself and the company, was he right in bringing the action, but also, in one sense, he was endeavoring to protect the fund for the real owner, and it seems to me that if any one was entitled to indemnity, Haws’ claim should have been first allowed: more especially as his recovery against the company carried the costs of the action, and of which he was wholly deprived by the judgment in this.
The hardship is, that this whole litigation falls heavily upon Malady. But it cannot be regarded as anything other than a misfortune which attends almost every "loser of property in his endeavor to recover it.
He must prove his title, and usually in a court of law.
It is probably not too late for him to do so again. He can still apply to be let in to defend Haws’ suit; and upon that application the terms can be adjusted to protect and indemnify Haws. If after Malady is let in to defend, Haws continues the litigation, he cannot complain if he has to pay costs.
Our conclusions leave Haws at liberty to prosecute his action to judgment; but as Malady did not appeal, and *386 as the appeal of the railroad company was abandoned, the remainder of the judgment must stand.
We, therefore, upon Haws’ appeal reverse the judgment, so far as it restrains his prosecuting his action against the railroad company, and direct judgment absolute for him, dissolving the injunction, and dismissing the complaint as to him, with costs of the trial at Special Term, but without costs to either party upon this appeal.
Sedgwick and Van Vorst, JJ., concurred.